WILLIAM L. SMITH *vs.* HARRIET O. STAPLES, ADMINISTRATRIX.

Since 1810, when the law requiring an imprisoned debtor to support himself was repealed, it has been the duty of the creditor to provide for his maintenance, and the expense thus incurred can be recovered by the creditor as costs on the execution.

CIVIL ACTION for a contribution; brought to the Court of Common Pleas of Fairfield County, and reserved, upon facts found, for the advice of this court. The case is sufficiently stated in the opinion.

*E. L. Scofield*, for the plaintiff.

*W. H. Williams*, for the defendant.

CARPENTER, J. A prisoner was committed to the Fairfield county jail on civil process in October, 1874. He did not apply for the privilege of taking the poor debtor's oath, and neither he nor the creditor would pay for his support in jail: The jailer, the sheriff, detained him in custody till January, 1875, when, upon the refusal of the creditor to pay for his board he discharged him. The creditor thereupon brought a suit against the sheriff for an escape, and recovered judgment for the amount of his demand and

costs.   The sheriff paid a portion of the judgment and soon after died.

In 1878 the creditor applied to the plaintiff, one of the bondsmen for the sheriff, and he paid the balance of the judgment.   He then applied to the defendant, whose intestate was his co-surety on the bond, for a contribution, and on her refusal to pay this suit was brought.   The facts pertaining to the questions relating to the presentation of the claim are not material and are omitted.   The question which we regard as decisive of the case is the one relating to the duty of the jailer to support the prisoner while in jail.   If he was guilty of no default in that respect the plaintiff was not bound to pay the demand and is not entitled to contribution.

The statute (Gen. Statutes, p. 106, sec. 18,) expressly declares that " the jailer shall not be obliged to furnish support to any prisoner committed on civil process, except as is hereinafter provided."   Section 21 requires the jailer to furnish the prisoner at his request with necessary food, if he shall immediately apply to take the poor debtor's oath; and if the oath is administered, the jailer shall not stand charged with the prisoner unless the plaintiff shall give notice that he will apply for a review and leave money for his support, and also pays for his support before taking the oath.

That is all that is found in the statute expressly requiring either the plaintiff or the jailer to provide for the prisoner. A case like the present, in which the prisoner neglects or refuses to apply to take the poor debtor's oath, is not provided for.   The question then arises, whether the jailer was bound to detain the prisoner after the creditor had refused to pay for his support.   No statute authorizes payment by the town, county or state.   It was therefore the duty of the creditor to pay, or of the jailer to furnish support on the credit of the prisoner, or to detain him without support except as he might be able to supply himself.

It is to be regretted that the statute is not more explicit— that the duties of an important public officer, like the sheriff, should be left in such a vague and uncertain condi-

tion. As it is, we must determine as well as we may be able what was the duty of the sheriff under the circumstances.

It is not contended that it was his duty to detain the prisoner without proper support. Was he bound to support him at his own risk, or was he entitled to compensation from the creditor?

A brief reference to previous legislation will throw some light on the subject. By the statute in force in 1750 all prisoners, criminals and debtors, were expressly required to support themselves, and the jailer had a claim on them and their estates. That continued to be the law until 1838. In 1842 imprisonment for debt, except in certain specified cases, was abolished; and that provision does not appear in subsequent revisions.

Until 1810, if the prisoner was unable to pay for his maintenance in prison, he was liable to be sold to service according to the provisions of the " Delinquent Act"—a species of slavery that disappeared none too soon. After that provision was abolished it is not so clear how the jailer was paid in case the prisoner was unable to pay; but the statute making it his duty to pay still remained. After that provision, so far as it related to prisoners on civil process, was repealed, the legislature doubtless intended that the prisoner should be supported by the creditor. As the support, in a certain sense at least, may be said to be furnished at his instance and request, it seems reasonable that he should be liable for it. He invokes the aid of the law to assist him in collecting his demand. All other expenses he pays and adds to his claim as costs. Why should this be an exception? The prisoner is forcibly taken from his home and occupation and confined in jail; and the jailer is expected to furnish him with necessary food; and this for the supposed benefit of the creditor. Why should he not pay for it? The prisoner cannot be confined without food; it is unreasonable to require the jailer to furnish it upon the credit of an irresponsible debtor; the only other alternative seems to be, that the creditor.

VOL. XLIX.—12

the only person who expects to receive any benefit from the transaction, should be responsible for it. That certainly is not unreasonable. This view of the case is greatly strengthened by another statute, section 24, which has been in force substantially as it now is since 1750, and which provides that "the creditor may collect on execution all necessary expenses, for the detention and maintenance of any such prisoner in jail, when said oath shall not be administered to him, before he shall be discharged." It may be said that this statute, so far as it relates to maintenance, was intended to apply only to those cases in which the prisoner applied to take the poor debtor's oath. It may have been so limited so long as the statute was in force requiring the prisoner to support himself. After that statute was repealed, and the burden of support was thrown upon the creditor, the expense thereby incurred was brought directly within the operation of the 24th section.

This then is the state of the case. The statute requiring the prisoner to support himself has been repealed, another statute, which we have quoted, relieves the jailer of all obligation to support him, and the 24th section authorizes the creditor to collect on execution the expense of his maintenance. The implication therefore is very strong, so much so as to lead to a satisfactory conclusion, that it is the duty of the creditor to pay for the support of the prisoner, with the privilege of collecting it if he can on the execution. It necessarily follows that on his refusal to pay the jailer was under no obligation to support the prisoner at his own expense or risk, and his release was justifiable.

This matter is now regulated by statute. Session Laws of 1881, chapter 13. The jailer is not required to receive a prisoner on an execution in civil process unless the plaintiff deposits money for his support weekly in advance. We regard this statute not as creating the plaintiff's liability, but as recognising its existence, and regulating the time and manner of payment.

The jailer not being in default no obligation rested on the sureties. The plaintiff having voluntarily paid a de-

mand which could not have been enforced against him, he is not entitled to contribution.

Judgment is advised for the defendant.

In this opinion the other judges concurred.