CITY OF ATLANTA *v.* FIRST PRESBYTERIAN CHURCH.

A local statute which confers upon the municipal government power and authority to assess one third of the cost of grading, paving,

macadamizing and otherwise improving the roadway or street proper, on real estate abutting on each side of the street improved, subjects alike all real estate owned by individuals or private corporations, without respect to the purpose or use for which the property is held or to which it is devoted. Churches are not exempt, and after paying such assessment, the religious corporation to which a church belongs cannot recover back the money so paid into the city treasury. *Trustees, etc.* v. *City of Atlanta*, 76 *Ga.* 181, overruled.

February 27, 1891. Argued at the last term; reargued at this term.

Municipal and religious corporations. Assessments for street-paving. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1889.

Reported in the decision.

J. B. GOODWIN, J. T. PENDLETON and J. A. ANDERSON, for plaintiff in error.

HOKE & BURTON SMITH, *contra*.

BLECKLEY, Chief Justice.

This was an action by the church, a body corporate and politic, against the city, brought in February, 1887, to recover the sum of $616.87, the amount paid by the plaintiff to the defendant in January, 1885, in satisfaction of a *fi. fa.* which the city had issued against, and caused to be levied upon, the church building and the premises on which the same was situate, said premises fronting and abutting on Marietta street. The *fi. fa.* was issued for the *pro rata* share of these premises of the cost incurred in the year 1883 by the city in paving with Belgian blocks the roadway or street proper on which the premises abutted. The payment was made under protest, and to prevent a sale of the property in pursuance of the levy. The street was paved by virtue of the act of September 3d, 1881, amending the charter of. the city, and the provisions of the act were fully complied with. The church building was used only for church purposes and religious worship. At the trial the facts were agreed upon and reduced to writing,

and by consent of parties, the only question raised was stated thus : "Is property occupied by a church and used for church purposes only, and religious worship, liable for street improvement under the said act of 1881 ?" The court instructed the jury to find for the plaintiff ; and after verdict, the defendant moved for a new trial because of error in this instruction, and because the verdict was contrary to law and to evidence. The motion was overruled.

The act in question (Acts of 1880-1, p. 358) was construed by a majority of this court as then constituted, in *Trustees, etc.* v. *The City of Atlanta*, 76 *Ga.* 181 ; and that decision was afterwards held by a full bench to be conclusive upon the parties in that case, the same case having again come up for review. 83 *Ga.* 448. The principle of *res adjudicata* made the latter ruling a necessary corollary to the former, whether the first in order was correct or incorrect. But as the present case, although it involves the same question touching the right construction of the act of 1881, is a new case and between different parties, or with one of the parties different, the duty of construing the act *de novo* cannot be declined by the present bench, save upon the ground that the former construction is satisfactory, or if not, that it should be acquiesced in because of some mischief or public inconvenience likely to result from adopting and promulgating a different construction after the first has stood undisturbed for a period of nearly five years.

The rule of *stare decisis* is a wholesome one, but should not be used to sanctify and perpetuate error in so short a term as five years, without very weighty reasons in behalf of public policy. At the last term of this court, we recognized the rule, in *Scott* v. *Stewart*, 84 *Ga.* 772, as a right rule of decision where many transactions of the public at large, based on an exposition of the law

declared ten or eleven years ago, would probably be disturbed or vitiated by expounding the law differently now. We deprecate and distrust rash innovation as much as the most conservative magistrates ought, but it has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it. Indeed, the mind, private or official, which closes down upon all the errors it embraces, refusing to eject them when exposed, is no longer fit for the pursuit of truth. Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes. If this is to be done in any case, it would seem to be a case like the present, where a change of decision would uproot no transaction founded on the prior decision, and where the effect in the particular controversy at the bar would be simply to leave the parties where they had placed themselves by doing aright what one of them now seeks to have undone. If in very truth, according to the real law of the matter, the church corporation paid to the city a debt which it justly owed and for which it was legally liable, it could not recover back the money consistently with christian morality, were there no other obstacle to withdrawing the cash from the city treasury. Nor does the corporation desire so to do ; for it has united with the city in formulating thus the question to be decided : "Is property occupied by a church and used for church purposes only, and religious worship, liable for street improvement under the said act of 1881 ?" We could not answer truly according to our judicial convictions by citing and following the case in 76 *Ga.*, for we think that case misconstrues the act and unduly restricts its application.

The act, after conferring power to grade, pave, macadamize and otherwise improve the streets, invests

the mayor and general council with "power and authority to assess one third of the cost of grading, paving, macadamizing . . . and otherwise improving the roadway or street proper, on the real estate abutting on each side of the street improved : Provided, that before any street, or portion of a street, shall be so improved, the persons owning real estate which has at least one third of the fronting on the street, or portion of a street, the improvement of which is desired, shall, in writing, request the commissioners of streets and sewers to make such improvements, and said commissioners shall have approved the same, and shall forward the same, with their approval, to the mayor and general council, with a statement of the character of the improvement proposed to be made, and an estimate of the cost of the same, and said mayor and general council shall by ordinance direct the said work to be done." Acts of 1880–1, pp. 359, 360. The act proceeds to confer power to adopt by ordinance a system of equalizing assessments and prorating the cost "on the real estate according to its frontage on the street, or portion of a street, so improved." It declares "that the amount of assessment on each piece of real estate shall be a lien on said real estate from the date of the passage of the ordinance providing for the work and making the assessment"; and it gives the mayor and general council "authority to enforce the collection of the amount of any assessment so made for work . . upon streets . . by executions to be issued by the clerk of council against the real estate so assessed, and against the owner thereof at the date of the ordinance making the assessment, which execution may be levied by the marshal of said city on such real estate, and after advertisement and other proceedings, as in cases of sales for city taxes, the same may be sold at public outcry to the highest bidder, and such sale shall vest

an absolute title in the purchaser : Provided, that the defendant shall have a right to file an affidavit" to contest the amount due, etc. *Id.* p. 360.

It only requires that language shall be taken in its ordinary signification, in conformity to the rule of construction laid down in section 4 of the code, for us to be able to hold, not as a conjecture, but with absolute certainty, that the terms, " real estate abutting on each side of the street improved," include all lands so abutting, no matter to whom they belong nor how the buildings upon them may be occupied or used. Church property, therefore, is manifestly within the letter of the act, and as clearly within it as any other property whatsoever. The grant of power to assess it is no less express than is the grant of power to assess any other. The act neither makes nor hints at any discrimination, but uses words which embrace all real estate as appropriately and completely as they embrace any part of the same. It would be as consistent with the letter of the statute to deny that it comprehends any real estate at all, as to deny that it comprehends all that abuts on the street. This is the plain truth ; and yet the opinion of the court in 76 *Ga.* pp. 187, 188, launches the argument by referring to the rule that no corporation can exercise any power not expressly conferred or necessarily implied, and after observing that places of religious worship, etc. are not brought directly by name within the provisions of the act, adds, " and we do not think they can be brought within it by construction or necessary implication, unless it is made to appear that the property so exempted from taxation is used for purposes of ' private or corporate profit or income.' " This seems to be the fundamental error of the opinion ; it treats the city as invoking implication, whereas, the city points to an express grant, and the church invokes implication to limit the words of the grant. True,

church property is not brought in by its special name; nor is any other, the name applied to all alike being, " real estate abutting on each side of the street improved." The property now in question, though belonging to a religious corporation and used exclusively for worship and church purposes, is " real estate," and it abuts on Marietta street, the street improved. The true and only problem is, whether it can be taken out of the act by implication, not whether it can be brought in. The legislature, by not excepting any real estate whatever, has put it in, and no consistent and unforced construction of the act can be arrived at without setting out from this standpoint. To deny the natural import of the words of a statute, and thus exclude from them something that they evidently comprehend, and then to argue that this same thing cannot be brought in by implication, is to expel the occupant and then keep him out because he was never in. If the words, " the real estate abutting on each side of the street improved," are not definite and free from all manner of ambiguity, no words can be. And yet, clear and definite as they are, we can be morally certain that they comprehend more than the legislature intended they should; for they cover by their letter public as well as private property, and subject the whole alike to assessment, lien, levy and sale. That the public property of the United States, the State, the county or the city, was intended to be dealt with thus is so improbable that we can have no hesitation in holding that an implied exception as to all public property can and should be engrafted upon the act by construction. And just here the real question in its ultimate form emerges: can a like exception in favor of church property, which all will agree is not public but strictly private property, be recognized, and the words of the statute still further narrowed by construction so as to exclude it also? No

answer to this question is afforded by citing the clause of the constitution which authorizes the General Assembly to exempt church property as well as public property from taxation, and citing with it the act of 1878 (Code, §798), by which the power was exercised throughout its whole extent, and thereby, for the time being, exhausted. This court has ruled in *Hayden* v. *Atlanta*, 70 *Ga.* 817, a case which arose out of the identical statute we are now construing, that the taxation to which that power relates is taxation for revenue, and not local assessments for the improvement of streets, which latter are in the nature of an interchange of equivalents between the public and the owners of property locally benefited by the improvement. By general and now almost unanimous concurrence throughout the jurisprudence of the American States, there is an essential difference between the two species of taxation, and many rules, whether constitutional or statutory, which govern the former are without application to the latter. See, besides the citations in *Hayden* v. *Atlanta*, *supra*, City of Birmingham v. Klein, 89 Ala. 461, 7 So. Rep. 386; *Speer* v. *Athens*, 85 *Ga.* 49, 11 S. E. Rep. 802; 2 Dill. Mun. Cor. (4th ed.) §§777, 778. Consistency requires that when the constitution has been ruled, as in *Hayden* v. *Atlanta*, not to apply to local assessments, its provisions on the subject of taxation should not be treated as authority, direct or indirect, for holding property of any kind exempt from such assessments. If it supplies no rule for levying assessments, and declares no exemption from their imposition, what control can it possibly have when a statute on the subject of assessments is under construction. To appeal to it in the discussion, is either to recede from the doctrine that it is silent on assessments, or to invoke what it says on one subject to limit what the legislature has expressly said when treating of another.

v 86-47

Surely, the mere grouping of church property with public property, first by the constitution and then by the statute, in dealing with taxation proper, is no sufficient reason for concluding that the legislature intended that they should stand upon the same footing in the law of local assessments, where no such intention has been anywhere declared. The argument that because the legislature, under express authority granted to it by the constitution, has expressly exempted church property from taxation, therefore it has impliedly exempted it from local assessment, is manifestly fallacious. The constitution itself exempts nothing, not even public property; it only gives authority to the General Assembly to make certain exemptions. Without some express promulgation of the legislative will, no private property whatever could claim exemption from general taxation. How can a system of express exemption from such taxation be a legitimate premise from which to conclude that the legislature intends a system of implied exemption as to certain private property to run through its enactments on the subject of local assessments? Having once made the distinction between the two species of taxation, and professing still to adhere to it, we ought to accept its consequences. In no other way can consistency be maintained; and nothing inconsistent is law, for the law is never in conflict with itself, nor one part with another part.

It may be said, however, that the opinion we are reviewing does not cite the constitution, and the statute under it exempting church property from taxation, as authority, direct or indirect, but only as evincing on the part of the State a friendly spirit and disposition toward religious institutions and instrumentalities. For this purpose we concede the citation would be legitimate. The constitution defines very explicitly the

fiscal relation which the State is to bear to Religion. It declares, on the one hand (Code, §5006): "No money shall ever be taken from the public treasury, directly or indirectly, in aid of any church, sect or denomination of religionists, or of any sectarian institution." This settles it that the State shall pay nothing to the church. It declares on the other hand (Code, §§5181, 5182, 5184): "All taxation shall be uniform upon the same class of subjects, and ad valorem on all property subject to be taxed within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws. . . The General Assembly may, by law, exempt from taxation all public property, places of religious worship or burial; all institutions of purely public charity; all buildings erected for and used as a college, incorporated academy, or other seminary of learning; the real and personal estate of any public library, and that of any other literary association, used by or connected with such library; all books and philosophical apparatus; and all paintings and statuary of any company or association, kept in a public hall, and not held as merchandise, or for purposes of sale or gain: *Provided*, the property so exempted be not used for purposes of private or corporate profit or income. . . All laws exempting property from taxation, other than the property herein enumerated, shall be void." This settles it that the church, like other proprietors, shall pay taxes upon its whole property unless the legislature shall think proper to exempt its places of religious worship, etc., not used for purposes of private or corporate profit or income. All property of the church not embraced in this power of exemption stands, with reference to the State, upon exactly the same footing as if it belonged to individuals and had no connection with religious uses whatever. With respect to it, there can be no exemptions from general taxation expressly

granted, much less any resulting from implication only.
And the scheme of the constitution evidently is to have
no implied exemptions at all, certainly none other than
of public property. It may be that were the legisla-
ture to lay a tax for the benefit of the State upon all
property, without having declared any exemption what-
ever, the statute might be construed as impliedly ex-
cepting public property; but no court, we apprehend,
would feel warranted in extending the implication to
church property. Thus the matter stands with refer-
ence to the species of taxation with which the consti-
tution deals, to wit, taxation for revenue. The policy
of the State, as indicated by the constitution, is to
make no discrimination in favor of property devoted
to religious purposes save by express statute. Whilst
the legislature is empowered to extend favor to such
property, it is expected to do so, if at all, by express
provision. And such is now our whole statutory
scheme with reference to churches and Religion. The
policy is to favor them—favor them highly—but to leave
no favor whatever to implication. This is shown
by the opinion we are reviewing. It correctly refers to
a great number of topics in respect to which favors
have been granted, but they have all been expressly
granted. In the whole range of our State legislation
since the adoption of the code, we know of no in-
stance in which the legislature has been understood to
intend any favor or privilege in behalf of the church
which it has failed to set down and specify in express
terms. Taking the code and all our statutes together,
we have a comprehensive and specific enumeration of
particulars, in respect to which religion and those en-
gaged in its ministrations are preferred or favored;
but surely this is no warrant for a court to add to these
favors by construction or implication. On the con-
trary, as the legislature has expressed so much, the in-

ference ought to be that its expressions are coextensive with its will and intention.

Glancing now at the current of authority, let us see how the stream runs. In People v. McCreery, 34 Cal. 456, the Supreme Court of that State say: "The meaning of taxation must be kept in view, and that is, a charge levied by the sovereign power upon the property of its subject. It is not a charge upon its own property, nor upon property over which it has no dominion. This excludes the property of the State, whether lands, revenue or other property, and the property of the United States." Accordingly, it was held in Doyle v. Austin, 47 Cal. 353, that a statute providing for the opening of a street, and for the payment of the expenses by assessment upon the lands benefited, was not vitiated by an express exception from liability in making the assessment of lands belonging to the United States, the State of California, and the city, respectively, although it appeared by the report of the assessors that these lands would be benefited to the extent of $800,000.00. That property belonging to the public, and held for public uses, is exempt from taxation when not expressly subjected thereto, is held in the following cases: City of Rochester v. Town of Rush, 80 N. Y. 302; Directors of Poor v. School Directors, 42 Pa. St. 21; City of Louisville v. Commonwealth, 1 Duvall, 295. The same rule prevails as to assessments for local improvements of a public nature. Inhabitants of Worcester v. Mayor, etc. of Worcester, 116 Mass. 193; County Commissioners v. Board, etc. of Maryland Hospital, 62 Md. 127, 7 Am. & Eng. Cor. C. 300; State of Connecticut v. City of Hartford, 3 Am. & Eng. Cor. C. 610, the editor citing 49 Conn. 89, which is a miscitation. In Missouri, it would seem, an exemption is not implied in favor of all public property. St. Louis Public Schools v. St. Louis, 26 Mo. 468. And in Illi-

nois, under the constitution of 1870, such exemptions
are not implied.   Adams County v. Quincy, 22 N. E.
Rep. 624, 27 Am. & Eng. Cor. C. 150.   In New York,
certain words contained in a city charter were construed
to subject property of the State to assessment for the
improvement of a street.   Hassin v. City of Rochester,
67 N. Y. 528.   In Texas (Harris County. v. Boyd, 7
S. W. Rep. 713) an exemption in the constitution pro-
tecting the property of counties, cities and towns held
only for public purposes, from forced sale and from tax-
ation, was ruled to extend to an assessment against a
court-house for the improvement of a street.   It is mani-
fest, however, that this decision could have been rested
upon the general principle announced by the courts of
Massachusetts, Maryland and Connecticut, to the effect
that public property is not included in statutes for local
assessments unless specially named.

Implied exceptions in favor of public property also
prevail over general words in a statute founded on the
exercise of the power of eminent domain.   *Mayor, etc.
of Atlanta* v. *Central R. R.*, 53 *Ga.* 120 ; St. Louis, etc.
R. R. Co. v. Trustees, 43 Ill. 303.   We thus see that to
engraft an exception upon the amended charter of At-
lanta in favor of public property has the sanction of
authority.   But no such rule prevails, so far as we
know or have been able to ascertain, in favor of private
property used for religious purposes.   In the following
cases churches, although not expressly named in assess-
ment statutes, were held to be subject to assessment for
local improvements, notwithstanding they were exempt
by express law from general taxation :   Matter of the
Mayor, etc. of New York, 11 Johns. 77 ; (and see
Harlem Presbyterian Church v. Mayor, 5 Hun, 442 ;
Matter of Second Ave. M. E. Church, 66 N. Y. 395;
People v. Mayor, etc. of Syracuse, 2 Hun, 433) ; North-
ern Liberties v. St. John's Church, 13 Pa. St. 104 ; Le-

fevre v. Mayor, etc. of Detroit, 2 Mich. 586 ; City of
Ottawa v. Trustees of Free Church, 20 Ill. 423 ; Broad-
way Baptist Church v. McAfee, 8 Bush, 508, 8 Am. Rep.
480 ; Lockwood v. City of St. Louis, 24 Mo. 20. And
see First Presbyterian Church v. Ft. Wayne, 36 Ind.
338, 10 Am. Rep. 35 ; Second Universalist Society v.
City of Providence, 6 R. I. 235. . The like rule has been
applied to cemeteries. Mayor, etc. of Baltimore v.
Green Mount Cemetery, 8 Md. 517 ; Buffalo City Ceme-
tery v. Buffalo, 46 N. Y. 506 ; Lima v. Lima Cemetery
Ass'n, 42 Ohio St. 128, 5 Am. & Eng. Cor. C. 547. And
to hospitals, asylums and other charitable institutions.
Sheehan v. Good Samaritan Hospital, 50 Mo. 155, 11
Am. Rep. 412 ; City of Lafayette v. Orphan Asylum, 4
La. An. 1 ; Boston Seaman's Friend Society v. Boston,
116 Mass. 181, 17 Am. Rep. 153. And see City of
Chicago v. Baptist Theological Union, 115 Ill. 245, 13
Am. & Eng. Cor. C. 409 ; Matter of St. John's Asy-
lum, 69 N. Y. 353. Also, to institutions of learning,
etc. Matter of College Street, 8 R. I. 474.

If express words are requisite to exempt private
property from general taxation, there is no reason why
like words are not equally necessary to exempt it from
assessments. Lima v. Cemetery Ass'n, supra. Instances
of such express exemption are furnished by State, etc.
v. Mayor, etc. of Newark, 36 N. J. L. 478 ; State, etc.
v. City of St. Paul, 36 Minn. 529. But in City of Chi-
cago v. Baptist Theological Union, 115 Ill. 245, 13 Am.
& Eng. Cor. C. 409, it was held that even an express
exemption from assessment could not be granted under
the constitution of Illinois because violative of the
principle of equality. Inasmuch as the constitution of
Georgia neither expressly nor by implication lays down
any principle whatever touching local assessments, be-
ing entirely silent on the subject, there would seem to
be no defect of power in the legislature to spare churches

from such assessments at pleasure. We rule, not that the legislature might not have granted the exemption now contended for, had it been so disposed, but that it has not done so. The question of legal discrimination in favor of church property over secular property in the matter of bearing burdens is one of public policy; and it is for the legislature, not the courts, to mould that policy and proclaim it. The services of Religion to the State are of untold value ; but it is the glory of Religion in this country that it serves as a volunteer, without money and without price.                 *Judgment reversed.*