## S92Q1005. GRANITE STATE INSURANCE COMPANY v. NORD BITUMI U. S., INC. et al.

(422 SE2d 191)

BENHAM, Justice.

This case is before us on a certified question from the United States Court of Appeals for the Eleventh Circuit. The facts and procedural history of the case, as established in the opinion of the Eleventh Circuit,[1] may be summarized as follows: In 1984, a fire damaged a building owned by Macon-Bibb County Industrial Authority (the Authority) and leased by Nord Bitumi U. S., Inc. (Nord). The Authority was insured by St. Paul Surplus Lines Insurance Company (St. Paul) and Nord was insured by Granite State Insurance Company (Granite State) against loss to its personal property and leasehold improvements and for property damage liability. St. Paul paid the Authority $104,955, the amount of its damages less a $5,000 deductible, and then made demand on Nord and Granite State for the full amount of the damages, asserting that one of Nord's employees negligently caused the fire. At the same time, St. Paul offered to settle for 75 percent of the damages. On the ground that Nord had no responsibility for the loss under the terms of the lease, Granite State rejected the settlement offer. Because Granite State asserted that its liability coverage was limited to $50,000, Nord entered into negotiations with St. Paul to limit its potential uninsured exposure. Those negotiations, of which Granite State was not informed, resulted in a "Covenant" under which Nord paid St. Paul $33,716.25 (that sum included the $5,000 Nord had already paid the Authority for its deductible) and the parties agreed that St. Paul or the Authority would sue Nord for the full amount of the loss, but would look only to insurance to pay any resulting judgment. The Authority filed suit against Nord in Bibb County Superior Court and Nord forwarded the suit papers to Granite State, but not for 46 days. Granite State took the position that Nord's tardiness in forwarding the suit was a breach of the policy terms, relieving it of its duty to defend and indemnify, but filed an answer to the suit and, contemporaneously, filed a declaratory judgment action in the Northern District of Georgia regarding its duty to defend Nord. The Authority dismissed its suit but filed an identical suit less than one month later. Nord immediately forwarded the papers to Granite State, which continued to maintain that it had no obligation to defend Nord, gave notice of its reservation of rights, and answered the complaint. At Nord's behest, the suit filed in Bibb County Superior Court was removed to the Middle District of Georgia and the declaratory judgment action was transferred to that court.

---

[1] *Granite State Ins. Co. v. Nord Bitumi U. S., Inc.*, 959 F2d 911 (11th Cir. 1992).

Granite State moved for summary judgment, contending that the settlement agreement breached the insurance contract[2] and adversely affected its ability to defend or settle, and that the tardiness in forwarding the first suit papers was a breach of the insurance contract[3] which was not cured by the dismissal and refiling. The other parties filed cross-motions for summary judgment which were all granted; Granite State's motion was denied.

Based on those facts, the Eleventh Circuit certified the following questions to this court:

(1) Whether the cooperation clause contained in the comprehensive general liability policy precludes the insured from settling his excess liability without notice to or the consent of the insurer.

(2) Whether the insured's tardy forwarding of suit papers is cured by the plaintiff's voluntary dismissal and refiling of an identical lawsuit; or can the insurer rely on the tardy forwarding in the first suit to avoid liability even though the insured immediately forwarded the papers served in the second suit.

1. With regard to the first question, Granite State argues that the cooperation clause gives it the right to control the litigation and that Nord's act in settling with St. Paul deprived it of that right and focused the plaintiff's resources against Granite State. Nord's argument is that it negotiated the settlement only after Granite State wrongfully denied coverage and that it only exercised the right given it in

---

[2] Granite State relies on the following provisions:
*3. Insured's Duties in the Event of Occurrence, Claim or Suit*

\* \* \* \* \* \*

(c) The *insured* shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the *insured* because of injury or damage with respect to which insurance is afforded under the policy; and the *insured* shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The *insured* shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.
*4. Action Against Company* No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the *insured's* obligation to pay shall have been finally determined either by judgment against the *insured* after actual trial or by written agreement of the *insured,* the claimant and the company.
[3] The provision on which Granite State relies follows:
[I]f claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

the policy to use its own money to pay the excess liability above the amount which Granite State insisted was the limit of its liability. We find the latter argument far more persuasive.

Relying largely on *Gates Formed Fibre Prods. v. Imperial Cas. &c. Co.*, 702 FSupp. 343 (D.Me. 1988), Granite State complains that Nord's failure to give it notice of the settlement opportunity which led to the Covenant was a breach of Nord's duty as an insured. Our view of the facts of the case, however, lead us to a different conclusion. It is apparent from the sums involved that what Nord paid to settle its direct liability was the amount for which it would have been liable had Granite State not rejected the settlement offer made by St. Paul, i.e., 75 percent of the Authority's damages minus the $50,000 which Granite State insisted was the limit of its coverage. It is unquestioned that Granite State was aware of that settlement opportunity, but chose not to accept it. Under those circumstances, Granite State cannot effectively assert that it did not have notice of the settlement opportunity.

" 'Wilfulness and fraud are essential ingredients to substantiate . . . failure to cooperate.' [Cit.]" *Hurston v. Ga. Farm Bureau &c. Ins. Co.*, 148 Ga. App. 324 (1) (250 SE2d 886) (1978). The evidence here shows neither wilfulness nor fraud, only that Nord took steps to protect its interests after Granite State denied any duty to defend. Furthermore, the cooperation clause expressly excepts from its prohibition an insured making payments at its own cost, which is what Nord has done.

We conclude, therefore, that under the facts of this case, the cooperation clause in the liability policy issued to Nord by Granite State did not preclude Nord from settling its excess liability without notice to or the consent of the insurer. Accordingly, the first certified question is answered in the negative.

2. The second question certified to us by the Eleventh Circuit concerns the effect of the dismissal of the first suit filed against Nord and subsequent filing of an identical suit. The policy at issue contains a clause, quoted in footnote 3, supra, requiring the prompt forwarding of suit papers. We agree with Granite State that Nord breached that provision of the policy when it failed to forward to Granite State the complaint in the first suit filed by the Authority, and that the breach relieved Granite State of its obligation to defend that suit and of its liability for any judgment resulting from that suit. See, e.g., *Diggs v. Southern Ins. Co.*, 172 Ga. App. 37 (321 SE2d 792) (1984). We do not agree with Granite State, however, that Nord's breach with regard to forwarding the first suit relieves Granite State of its duty to defend the second suit.

There being no direct Georgia authority on this point, we start with the contract of insurance. The applicable contract provisions

here are the clause quoted in footnote 3, supra, requiring that the insured immediately forward suit papers and the "no action" clause quoted in footnote 2, supra. The context in which those two provisions must be viewed is set out in this court's opinion in *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333 (1) (380 SE2d 686) (1989):

> Georgia courts have long acknowledged that insurance policies are prepared and proposed by insurers. Thus, if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured.

Granite State argues that the policy language should be construed to provide that any breach of the contract would relieve it from all liability under the policy. The other parties to this case favor a construction under which Granite State would be relieved of its duty to defend the particular suit as to which the insured failed to comply with the contract, and of liability for a judgment arising from that particular suit. Given the consideration stated in *Claussen*, supra, we find the latter construction more appropriate and adopt it.

It is clear, then, that Granite State would have had no duty to defend or liability to pay a judgment arising from the first suit filed against Nord by the Authority. That suit, however, was dismissed. Under the construction of policy language we adopted above, the breach by Nord affected only that suit. It follows that the dismissal of the suit cured the breach: there was no longer any suit pending as to which Nord had failed to comply with the policy's provisions.

When the Authority filed a renewal suit under OCGA § 9-2-61, it was an action de novo (*Adams v. Gluckman*, 183 Ga. App. 666 (1) (359 SE2d 710) (1987)) and Nord's contractual obligation as to that new suit came into being when the renewal suit was filed. Granite State's argument that the renewal suit brings with it all the baggage of the first suit is controlled adversely to it by *Bell v. Figueredo*, 190 Ga. App. 163 (1) (378 SE2d 475) (1989). There, the Court of Appeals made clear that the provision in OCGA § 9-2-61 that a renewed suit would "stand on the same footing, as to limitation, with the original case . . ." applied only to limitations and that all other aspects of the case were unaffected. The second action filed by the Authority was a new action and Granite State was not entitled to rely on the earlier breach to avoid its duty and potential liability with regard to the second action. The answers to the second question certified to us, then, are yes, the tardy forwarding of suit papers was cured by the voluntary dismissal and refiling of an identical suit, and no, the insurer may not rely upon the tardy forwarding of the first suit to avoid liability in the second suit.

*Certified questions answered. Clark, C. J., Bell, P. J., Hunt, Fletcher and Sears-Collins, JJ., concur.*

DECIDED NOVEMBER 5, 1992.

*McPhail & Marmur, Jon B. McPhail, Sari B. Marmur,* for appellant.

*Hurt, Richardson, Garner, Todd & Cadenhead, James J. Brissett, Jones, Cork & Miller, Hubert C. Lovein, Jr., Brandon A. Oren,* for appellees.