S97G1331. STOUT v. CINCINNATI INSURANCE COMPANY.
(502 SE2d 226)

CARLEY, Justice.

Elva Stout was injured in a vehicular collision. She filed suit against the driver and owner of the other vehicle, but did not serve Cincinnati Insurance Company in its capacity as her uninsured motorist carrier (UMC). After the statute of limitations had run, Ms. Stout discovered that the defendants' liability insurer was insolvent. She dismissed her suit, then refiled it within the six-month renewal period authorized by OCGA § 9-2-61 (a). The UMC was served with the complaint in the renewal action, but moved for dismissal because it had not been served with the original action within the statute of limitations. The trial court granted the motion to dismiss, and the Court of Appeals affirmed. *Stout v. Cincinnati Ins. Co.*, 226 Ga. App. 220 (486 SE2d 195) (1997). We granted certiorari in order to address two questions: 1) whether the statute of limitations for serving a UMC pursuant to OCGA § 33-7-11 should be the same as that for serving the defendant, even though the defendant does not qualify as uninsured under the statute until after the applicable statute of limitations has run; and, 2) whether service on a UMC of an original action is necessary in order to allow for service in a properly filed renewal action. We answer the first question in the affirmative, and the second question in the negative. Accordingly, the judgment of the Court of Appeals must be reversed.

The precise question of whether initial service on a UMC of a valid renewal suit will satisfy the requirement of OCGA § 33-7-11 (d) was answered in *United States Fid. &c. Co. v. Reid*, 268 Ga. 432, 434 (491 SE2d 50) (1997): "[A] plaintiff can wait to serve a UMC until he files a valid renewal suit after the running of the statute of limitation." This holding is based upon a recognition that OCGA § 33-7-11 (d) does not require service for the purpose of making the UMC a party to the underlying tort action, but does provide for service on the UMC "as though [it] were actually named as a party defendant." Thus, service is intended only to give the UMC "notice of the exis-

tence of a lawsuit in which it ultimately may be held financially responsible." *Bohannon v. Futrell*, 189 Ga. App. 340, 342 (1) (375 SE2d 637) (1988). Since the purpose of service on the UMC is simply to provide notice of the pendency of a lawsuit, rather than to establish the personal jurisdiction necessary to adjudicate liability, it is the validity of the service of the underlying lawsuit on the defendant which must necessarily control. If the defendant was validly served within an authorized time period, then it follows that the UMC also can be served within that same time period. Under those circumstances, the purpose of OCGA § 33-7-11 (d) to provide the UMC with notice of the pendency of a lawsuit is fully met. Allowing the UMC to set forth, in the context of a case in which it is not even a party, a statute of limitations defense which would not be available to the named party defendant, is completely inconsistent with the tenor of OCGA § 33-7-11 (d). The UMC cites no case which holds that the statute creates an independent statute of limitations defense for a non-party to the lawsuit. Although the UMC should not be placed in a worse position than the alleged tortfeasor for whose negligence it may ultimately be held financially responsible, it likewise should not be placed in a better position. In neither event is the UMC being treated as though it "were actually named as a party defendant" in the lawsuit. Because the statutory requirement that the plaintiff serve his own UMC is intended to achieve the same purpose as a contractual requirement that the defendant notify his own liability carrier of the pendency of a suit, there is no reason why service is not permissible on the UMC at any time within which valid service could be made on the defendant. See *Granite State Ins. Co. v. Nord Bitumi U.S.*, 262 Ga. 502, 504 (2) (422 SE2d 191) (1992).

*Reid* is not inconsistent with *Bohannon v. J.C. Penney Cas. Ins. Co.*, 259 Ga. 162 (377 SE2d 853) (1989) and creates no unwarranted exception to the principles stated therein. The actual holding of *Bohannon*, supra at 163, is that, under OCGA § 33-7-11 (d), the uninsured motorist carrier (UMC) "must be served within the time allowed for *valid service on the defendant in the tort action*. [Cit.]" (Emphasis supplied.) See also *Vaughn v. Collum*, 236 Ga. 582 (224 SE2d 416) (1976). Thus, *Reid* is entirely consistent with *Bohannon*'s requirement that the UMC be served within the *same* time period as is applicable to the defendant in the underlying lawsuit. Nothing in *Bohannon* requires that the lawsuit that is eventually served on both the defendant and the UMC be the initial lawsuit which was served only on the defendant. The only "tort action" which can now ultimately result in financial responsibility for the UMC is the renewal action. Although totally unauthorized by *Bohannon*, the UMC urges recognition of an exception to the mutually applicable period for service when the underlying lawsuit is a renewal action, so that the

UMC, but not the party defendant, can raise a statute of limitations defense. This exception is not only inconsistent with the tenor of *Bohannon* and the express holding of *Reid*, it also would require overruling the decision in *Granite State Ins. Co. v. Nord Bitumi U.S.*, supra, written by then Justice, now Chief Justice, Benham. *Granite State* held that although the insured failed to comply with notice requirements with regard to the initial, but later dismissed, lawsuit, timely notice of the renewal action to a non-party liability insurer was sufficient. We adhere to *Bohannon*, and decline to overrule *Reid* and *Granite State Ins. Co.* Based upon stare decisis and under the controlling authority of *Reid*, the Court of Appeals erred in affirming the grant of the UMC's motion to dismiss.

*Judgment reversed. All the Justices concur, except Fletcher, P. J., who concurs specially, and Benham, C. J., and Sears, J., who dissent.*

FLETCHER, Presiding Justice, concurring specially.

1. *Bohannon v. J.C. Penney Casualty Ins. Co.*[1] established a bright-line rule requiring plaintiffs with uninsured motorist (UM) coverage to serve the UM carrier in every case, even when the defendant had insurance. The clarity of this rule avoided the confusion and complexity that would arise if courts had to determine when a plaintiff knew or should have known of the defendant's uninsured state and whether the plaintiff acted diligently once on notice. I now conclude, however, that the judicial convenience created by *Bohannon* does not outweigh the resulting harshness. A lawyer who fails to comply with *Bohannon* deprives his client of the benefit of the UM insurance contract and leaves the client with no remedy except a malpractice suit against the lawyer. I agree that this is neither a satisfactory nor fair rule. Therefore, I concur in the majority's result, which effectively overrules *Bohannon*. I, however, would do so expressly.

2. The majority exempts suits against UM carriers from any statute of limitations requirement. Rather than adopt such a broad rule, I would adopt the rule suggested by Justice Weltner in his dissent in *Bohannon* and require plaintiffs to serve the UM carrier "as soon as reasonably possible *after* becoming aware, by whatever means, that there is a substantive doubt as to the existence of adequate insurance coverage of an event that might become the subject of an uninsured motorist claim."[2] This rule would alleviate the harshness of *Bohannon* in cases such as this where the defendant became uninsured after the running of the statute of limitations. It also has the advantage of providing a defense when the plaintiff's lack of dili-

---

[1] 259 Ga. 162 (377 SE2d 853) (1989).
[2] Id. at 163-164.

gence in service is prejudicial.

BENHAM, Chief Justice, dissenting.

The late Justice Weltner suggested in a dissent in *Bohannon v. J. C. Penney Cas. Ins. Co.*, 259 Ga. 162 (377 SE2d 853) (1989), that this Court could shape a remedy for those who failed to obey the dictate of OCGA § 33-7-11 (d), but a majority of this Court properly rejected that suggestion, holding that the formulation of exceptions to the statute "is a task that is better left to the legislature." *Bohannon*, supra at 163. Because the majority opinion in this case perpetuates the mistaken creation of such a remedy in *U. S. Fidelity &c. Co. v. Reid*, 268 Ga. 432, 434 (491 SE2d 50) (1997), I must dissent.

In *Reid v. U. S. Fidelity &c. Co.*, 223 Ga. App. 204, 206 (477 SE2d 369) (1996), the Court of Appeals suggested that this Court's opinions in *Hobbs v. Arthur*, 264 Ga. 359, 360 (444 SE2d 322) (1994), and *Ga. Farm Bureau Mut. Ins. Co. v. Kilgore*, 265 Ga. 836, 838 (462 SE2d 713) (1995), "have created the exception called for by Justice Weltner in his dissent in *Bohannon* . . . ." Although the majority opinion in *U. S. Fidelity &c. Co. v. Reid*, supra, did not address that statement, Presiding Justice Fletcher made the same point in his special concurrence, suggesting that this Court should resolve the conflict. While I am reluctant to reconsider a decision made so recently, I feel compelled to do so in this case:

> [I]t has never been the doctrine of any court of last resort that the law is to be a refuge and safe asylum for all the errors that creep into it. Indeed, the mind, private or official, which closes down upon all the errors it embraces, refusing to eject them when exposed, is no longer fit for the pursuit of truth. Courts, like individuals, but with more caution and deliberation, must sometimes reconsider what has been already carefully considered, and rectify their own mistakes.

*City of Atlanta v. First Presbyterian Church*, 86 Ga. 730, 733 (13 SE 252) (1891).

It is necessary, therefore, to reexamine our holding in *Reid*. Our holding there was based in part on this Court's decision in *Ga. Farm Bureau Mut. Ins. Co. v. Kilgore*, supra, where we hypothesized, in a discussion of diligence in obtaining service on a UMC, that the Kilgores could have dismissed their action, refiled it within six months, and then served their UMC with the complaint in the renewal action. Since *Kilgore* was decided on the basis of diligence in obtaining service, the hypothetical statement in *Kilgore* was not necessary to the resolution of that case. Since the statement was not nec-

essary to the holding and was not supported by authority,[3] it was obiter dictum (*Davis v. State*, 266 Ga. 212 (465 SE2d 438) (1996)), constituted no ruling on the issue (*Veal v. Barber*, 197 Ga. 555 (1) (30 SE2d 252) (1944)), and was not binding on this Court. *Peacock v. Peacock*, 196 Ga. 441, 449 (26 SE2d 608) (1943). Nonetheless, we cited *Kilgore* in *Reid* as authority for the proposition that "a plaintiff can wait to serve a UMC until he files a valid renewal suit after the running of the statute of limitation." Id. at 434. Since the statement in *Kilgore* was plainly dicta, the portion of the rationale in *Reid* which depended on it is not viable.

The other ground for the decision in *Reid* was based on an analysis of the law pertaining to renewal actions and service issues in renewal actions. That analysis, involving as it does the rights of parties, ignores the real function of the statutory requirement of service on the UMC: "The service requirement of OCGA § 33-7-11 (d) should . . . be read as a statutory prerequisite a plaintiff must fulfill in order to collect uninsured motorist benefits . . . ." *Bohannon v. Futrell*, 189 Ga. App. 340 (1) (375 SE2d 637) (1988). Since the purpose of the service requirement is to give the UMC notice of the potential for a claim against it, and not to make the UMC a party, there is no need to consider application of the renewal statute or whether the underlying suit was valid, voidable, or void. The only question to be answered in this and similar cases is whether the UMC has been served as though it were a party, which this Court determined in *Bohannon* to mean service within the period of limitation. If that service was made, the statutory prerequisite of notification has been satisfied and the UMC will be liable for any judgment obtained against an uninsured motorist. If the service was not made, the insured will have, in effect, waived the opportunity to recover under uninsured motorist coverage.

Reconsideration of the rationale of *Reid* leads me to the conclusion that we were in error in that case when we applied the law of renewal actions to the issue of service on UMCs. Accordingly, I would overrule *U. S. Fidelity &c. Co. v. Reid*, 268 Ga. 432, supra, insofar as it holds that the failure to serve a UMC within the applicable period of limitation may be remedied by dismissing the action and then serving the UMC.

The majority opinion in this case fails to accept the hard truth that *Reid* constituted an abandonment of the precedent of this Court in *Bohannon*. Worse, it entirely fails to address the fact that the holding in *Reid* was constructed of a combination of dicta and improper

---

[3] After the assertion in *Reid* concerning service on a UMC in a renewal action, there was a citation to *Hobbs*, supra, but that case did not involve a UMC and is not authority for how and when a UMC may be served.

application of established law pertaining to renewal actions. The majority opinion fails to rebut the fact that *Reid* directly violates this Court's holding in *Bohannon* that any exceptions to the notice requirement in OCGA § 33-7-11 (d) must be made by the legislature. Finally, the majority opinion's suggestion that adhering to the state of the law established in *Bohannon* would overrule *Granite State Ins. Co. v. Nord Bitumi U. S.*, 262 Ga. 502 (422 SE2d 191) (1992), is mistaken. This case involves statutory construction and appropriate deference to the legislative process and separation of powers; *Granite State* involved construction of contractual language as to which there was no Georgia authority, and in the process of which the language was construed most strongly against the drafter of it, a rule which has no counterpart in statutory interpretation. Because the controlling principles of the two cases derive from very different bodies of law, adhering to the law would neither overrule nor be inconsistent with *Granite State*. This Court should take this opportunity to undo the wrong it did in *Reid*.

If we were to overrule *Reid*, as we should, the basic question presented by this case, whether a plaintiff who has not served the UMC prior to the running of the statute of limitation may dismiss the case, still having made no service on the UMC, then file a renewal action and obtain valid service on the UMC, would be answered in the negative. This Court held in *Bohannon* that OCGA § 33-7-11 requires that a UMC be served within the applicable period of limitation. That requirement was not met in this case. The Court of Appeals was correct, therefore, in affirming the trial court's judgment in the UMC's favor. Because the majority opinion has held otherwise, I dissent.

I am authorized to state that Justice Sears joins in this dissent.

DECIDED JULY 13, 1998 —
RECONSIDERATION DENIED JULY 30, 1998.

*Jolles & Slaby, Isaac S. Jolles,* for appellant.
*Fulcher, Hagler, Reed, Hanks & Harper, Scott W. Kelly, Timothy S. Mirshak,* for appellee.