## A09A0445. CHANDLER et al. v. OPENSIDED MRI OF ATLANTA, LLC et al.

(682 SE2d 165)

ADAMS, Judge.

In this refiled civil action, plaintiffs Ollie Mae Chandler and Grady Chandler, Sr., sued defendants Opensided MRI of Atlanta, LLC, Opensided Management, LLC, and MMR Holdings, Inc., alleging that they suffered injuries caused by defendants' negligence. The trial court granted defendants' motion to dismiss on the ground that the Chandlers failed to file an expert affidavit with their original complaint in accordance with OCGA § 9-11-9.1 (a). On appeal, we hold that there is not enough information in the record to determine whether the original complaint alleged only professional malpractice. And, even if it did, the defendants waived their defense to renewal under OCGA § 9-11-9.1 by not filing a motion to dismiss contemporaneously with their answer to the original complaint.

On appeal, we conduct a de novo review of a trial court's ruling on a motion to dismiss. *Penny v. McBride*, 282 Ga. App. 590 (639 SE2d 561) (2006). Our role is "to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." Id.

The original complaint shows that on May 18, 2005, Ollie Chandler went to the defendants' outpatient medical imaging facility to undergo a magnetic resonance imaging (MRI) of her right shoulder. Mrs. Chandler was led to the treatment room by an MRI technician, where she lay down on the MRI table. After the procedure had been completed, the technician discussed the results with Chandler and told her that she could get up. In attempting to do so, she fell to the floor and suffered serious injuries. The complaint alleged that the table was lowered when she got on but not lowered when she got off.

On April 11, 2007 (nearly one month before the expiration of the statute of limitation[1]), the Chandlers filed a complaint against the defendants. The complaint alleged that the defendants caused Chandler's fall by negligently failing to lower the MRI table and by failing to assist her off the table after the procedure was completed. Mr. Chandler claims loss of consortium. The complaint did not include an expert affidavit as required by OCGA § 9-11-9.1 (a) in professional malpractice cases.

On May 24, 2007, after the statute of limitation had run,

[1] OCGA § 9-3-71 (a).

defendants filed their answers to the complaint, which included defenses that the complaint failed to state a claim upon which relief can be granted and that it did not comply with the affidavit requirement under OCGA § 9-11-9.1. But they did not move to dismiss on this ground at the time of their answer. It was not until five months later that defendants filed a motion to dismiss the complaint based on failure to file an expert affidavit. One month later, the Chandlers voluntarily dismissed their complaint without prejudice.

On December 12, 2007, the Chandlers refiled their complaint and attached an affidavit of a radiology technician, which alleged that the defendants' failure to lower the MRI table and to assist Mrs. Chandler off the table breached the standard of care for radiological technicians. Shortly thereafter, defendants filed their answers and refiled their motion to dismiss the complaint. On August 8, 2008, the trial court entered an order granting the defendants' motion to dismiss the refiled complaint on the grounds that the original complaint alleged professional malpractice but failed to include an expert affidavit as required by OCGA § 9-11-9.1 (a) and that the refiled complaint was barred by the statute of limitation. This appeal followed.

1. The Chandlers contend the trial court erred in dismissing their refiled complaint, arguing that neither their original nor their refiled complaint alleged professional negligence, and thus a section 9.1 affidavit was not required. We conclude that there is not enough information in the record to determine whether the case involves only professional negligence. It could be true that the table was too high for anyone to get off or that the technician simply forgot to lower the table. The facts are not sufficiently developed on this point.

When assessing whether the complaint alleges ordinary negligence, we must liberally construe the allegations of the complaint and only conclude that ordinary negligence has not been alleged if it is foreclosed by the complaint itself:

> In determining, as a matter of law, whether the complaint alleged claims based on ordinary negligence, professional negligence, or both, . . . we look solely to the allegations of the complaint and liberally construe the allegations to state a claim if, within the framework of the complaint, the plaintiff may introduce evidence which will sustain a grant of relief based on the claim. We will conclude that the complaint does not allege a claim only if the allegations of the complaint disclose with certainty that the plaintiff would not be entitled to relief on the claim under any state of provable facts.

(Citations and punctuation omitted.) *Health Mgmt. Assoc. v. Bazemore*, 286 Ga. App. 285 (648 SE2d 749) (2007) (evidence might establish either professional or ordinary negligence). See also *Peterson v. Columbus Med. Center Foundation*, 243 Ga. App. 749, 755 (2) (533 SE2d 749) (2000).

In falling patient cases, the distinction between ordinary and professional negligence turns on whether the decision on how to monitor, assist or care for the patient was based on a professional assessment of whether the patient, based on the patient's medical condition, required assistance of some sort. See *Brown v. Tift County Hosp. Auth.*, 280 Ga. App. 847, 849-850 (635 SE2d 184) (2006). "[I]f the specific information known to the defendant was such that a jury could determine without the help of expert testimony whether the defendant exercised due care in failing to prevent the patient's fall, the claim sounds in ordinary negligence and no expert affidavit is required." Id.

In this case we can only speculate whether the MRI technician had to assess Chandler's medical condition in order to decide whether she could get down from a raised examination table. It could be that no professional judgment was required. Her medical condition, a shoulder problem, could be completely unrelated to the action necessary to get down from a high table. See, e.g., *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107 (354 SE2d 872) (1987) (ordinary negligence where registered nurse dropped patient due to failure to obtain additional assistance or proper equipment to move patient). Like in *McNorrill*, "there is no evidence indicating that appellee's underlying medical condition was such that *only* an employee . . . with professional medical training would have been authorized to undertake the act," of, in this case, lowering the table, assisting Chandler, or warning her that the table was too high to get down. The dissent concludes that the degree to which Mrs. Chandler needed assistance, given her pre-existing shoulder injury, required the exercise of the MRI technician's expert medical judgment. That certainly could be true, but it is speculation at this point.

Also, "[i]f the alleged negligent act or omission of a hospital employee does not require the exercise of expert medical judgment, the fact that the employee also has expert medical credentials does not make the case one of 'medical malpractice.' " *McNorrill*, 182 Ga. App. at 110. And here, as in *Bazemore*, the plaintiff could develop evidence showing that her fall resulted from ordinary negligence, such as the table was simply too high for anyone to get down. Because the original complaint does not preclude such a claim, dismissal for failure to provide an expert affidavit was premature.

2. The trial court also erred by dismissing the plaintiffs' renewed complaint because the defendants waived their objection to the

148

plaintiffs renewing their complaint to add the required affidavit. They did so by failing to file a separate motion to dismiss contemporaneously with their answer to the plaintiffs' original action.

(a) The plain language of the current version of OCGA § 9-11-9.1 (f) limits a plaintiff's ability to renew an affidavit-less complaint after the running of the statute of limitation, but it provides that a defendant must file a motion to dismiss contemporaneously with the answer in order to enforce that limitation:

> If a plaintiff fails to file an affidavit as required by this Code section *and the defendant raises the failure to file such an affidavit by motion to dismiss filed contemporaneously with its initial responsive pleading,* such complaint shall not be subject to the renewal provisions of Code Section 9-2-61 after the expiration of the applicable period of limitation, unless a court determines that the plaintiff had the requisite affidavit within the time required by this Code section and the failure to file the affidavit was the result of a mistake.

(Emphasis supplied.) In 1997, the legislature specifically added the language "by motion to dismiss filed contemporaneously with" to this rule.[2] Prior to 1997, the subsection only required the defendant to raise the failure to file an affidavit "in its initial responsive pleading."[3] "The purpose of this [new] provision [was] to resolve any questions about the sufficiency of the affidavit early in the litigation."[4]

The legislature was fully aware in 1997 that a responsive pleading (usually an answer) and a motion to dismiss are two separate things.[5] Also, the legislature specifically added the motion requirement to three subsections of the statute. Later, however, the legislature decided to remove or modify the requirement in two subsections, yet it retained the requirement in the renewal subsection, i.e, current subsection (f).[6] These actions show the legislature's careful consideration of the motion requirement.

---

[2] Ga. L. 1997, p. 916, § 1 (in 1997, the relevant subsection was "e").

[3] Ga. L. 1989, p. 419, § 3 (in 1989, the relevant subsection was "f").

[4] 14 Ga. St. U. L. Rev. 7 (1997).

[5] A motion is not a pleading; pleadings are defined as seven specific filings, including a "complaint" and an "answer." OCGA § 9-11-7 (a). A motion is "an application to the court for an order," and "unless made during a hearing or trial, [it] shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." OCGA § 9-11-7 (b) (1).

[6] Compare Ga. L. 1989, p. 419, § 3; Ga. L. 2005, p. 1, § 3; Ga. L. 2007, p. 2007, § 1. Also, in one change to a different subsection, the legislature required that the defendant act "by motion to dismiss filed *on or before the close of discovery. . . .*" (Emphasis supplied.) OCGA §

The dissent contends the defendants took sufficient action to prevent the plaintiffs from renewing to solve failure to file an affidavit because their answer, i.e., their initial responsive pleading included a defense of failure to file an expert affidavit and a generic request, in the prayers for relief, that the case be dismissed. But this Court has previously held that a defense raised in an answer plus a request in a prayer for relief that the complaint be "invalidated" "[*does*] *not* meet the requirements of a motion." *Howell v. Styles*, 221 Ga. App. 781, 782 (1) (472 SE2d 548) (1996). An allegation or statement in an answer is not a motion to dismiss. See id. See also *Glass v. Glover*, 241 Ga. App. 838, 839 (528 SE2d 262) (2000) (demand/request for award of attorney fees in answer and pre-trial order did not satisfy requirement that fees and expenses "may be requested by motion . . ."). Finally, a defense and a prayer for dismissal would not accomplish the legislature's intent to resolve any questions about the sufficiency of a section 9.1 affidavit early in the litigation.

In short, the addition of language to OCGA § 9-11-9.1 (f) requiring a "motion to dismiss filed contemporaneously with [the defendant's] initial responsive pleading" was a deliberate legislative act modifying the requirement from what it had been, which was that the defendant merely had to raise the defense in its "initial responsive pleading.'"[7] Accordingly, *Winfrey v. Total Health Clinic Corp.*, 255 Ga. App. 617 (566 SE2d 372) (2002), which came to the conclusion that raising a defense and asking for dismissal in the initial responsive pleading was sufficient, is overruled. The case did not examine the legislative history of OCGA § 9-11-9.1. And it concluded that "the critical requirement is the timing of defendants raising this defense, not the form in which it is raised." Id. at 619. But the legislative history of OCGA § 9-11-9.1 shows exactly the opposite: under the 1997 amendment, as well as the current statute, the timing remained the same but the form of the requirement changed.

In this case, the defendants failed to file a motion to dismiss the

---

9-11-9.1 (e). "Where, as here, 'the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended. [Cit.]' [Cit.]" *Berryhill v. Ga. Community Support & Solutions, Inc.*, 281 Ga. 439, 442 (638 SE2d 278) (2006).

[7] The dissent's reliance on the Supreme Court's interpretation of the 1997 amendments reveals the lack of a firm foundation for a contrary conclusion. In 1999, the Supreme Court addressed the question of whether the 1997 amendments were retroactive. *Mug a Bug Pest Control v. Vester*, 270 Ga. 407 (509 SE2d 925) (1999). As a preface, and in dicta, it attempted to summarize the changes made to the statute. In so doing, it stated that the changes "required the defendant to seek dismissal in its initial responsive pleading." Id. at 408 (1). But the Supreme Court clearly misspoke. As shown above, the statute required that action prior to 1997, whereas the amendments added the new provision requiring a contemporaneous motion.

plaintiffs' original complaint contemporaneously with their initial responsive pleading as is plainly required by the statute. They therefore waived the litigation tactic of preventing the plaintiffs from filing a renewal action after the running of the statute of limitation.

(b) Second, given the defendants' waiver, the plaintiffs were authorized to renew their complaint after the running of the statute of limitation in accordance with OCGA § 9-2-61, even though they did not possess such an affidavit at the time of the original complaint. Even if the plaintiffs alleged professional malpractice in their original complaint, the lack of a malpractice affidavit rendered that complaint voidable but not void, and, accordingly, the case was renewable.

OCGA § 9-11-9.1 does not operate in a vacuum. Plaintiffs in "any case"[8] have long had a statutory privilege to renew an action, albeit only once, after the expiration of the applicable period of limitation (as long as it is done within six months of the dismissal). OCGA § 9-2-61 (a). As shown above, subsection (f) of OCGA § 9-11-9.1 shows that *if* a plaintiff fails to file the requisite affidavit with its original complaint *and* the defendant files the requisite motion with its answer, the complaint cannot be renewed unless the plaintiff had the affidavit at the time of the original complaint but mistakenly failed to file it. It follows that if the defendant *does not* file a motion at the requisite time, the plaintiff *may renew* regardless of whether he or she had an expert affidavit at the time of the original complaint.

The dissent relies on two cases for the idea that the "failure to file an expert affidavit with the complaint as required by OCGA § 9-11-9.1 is a nonamendable defect foreclosing the use of OCGA § 9-2-61, unless the court determines that the affidavit was available prior to the filing of the complaint." *Grier-Baxter v. Sibley*, 247 Ga. App. 560 (545 SE2d 5) (2001); *Lyberger v. Robinson*, 207 Ga. App. 845 (429 SE2d 324) (1993). But both of these cases, as well as others not mentioned in the dissent, are based on an error introduced into the law of OCGA § 9-11-9.1 in the case of *Foskey v. Foster*, 199 Ga. App. 205 (404 SE2d 303) (1991). That opinion, which was interpreting the original version of OCGA § 9-11-9.1, overlooked directly controlling Supreme Court precedent, and although the statute has been modified four times, nothing in any of the amendments to the statute alters that precedent.

Based on the original version of the statute, the Supreme Court had already held that a plaintiff could dismiss and renew a profes-

---

[8] The statute specifically excepts "contracts for the sale of goods covered by Article 2 of Title 11." OCGA § 9-2-61 (b).

sional malpractice action *after* the running of the statute of limitation when the initial complaint lacked the requisite affidavit. *Patterson v. Douglas Women's Center, P.C.*, 258 Ga. 803 (374 SE2d 737) (1989). Although the plaintiff had alleged in the initial complaint that an affidavit was attached, none was. But the court did *not* find that an affidavit in fact existed at the time of the initial complaint. Following the defendants' motion to dismiss and after the running of the statute of limitation, the plaintiff dismissed and refiled. The court first noted that the renewal statute provides for renewal within six months of a dismissal even if the statute of limitation has run. Next, the Supreme Court explained that the renewal provision does not apply to cases decided on their merits or to void cases, "but does allow renewal if the previous action was merely voidable." Id. at 804 (3). This is still the law of renewal.[9] Importantly, the court then held that the failure to file the required affidavit contemporaneously with the complaint *does not* render the complaint void but merely voidable, in a case where there was no indication that the plaintiff had the affidavit earlier. Accord *Reid v. Brazil*, 193 Ga. App. 1 (387 SE2d 1) (1989).

*Foskey v. Foster*, however, ignored *Patterson* and *Reid* and introduced an error that has forced modern cases to veer off course. In *Foskey*, the plaintiff timely sued a physician and his employer and attached an affidavit that pertained only to the physician. *Foskey*, 199 Ga. App. 205. When the plaintiff discovered that it had the wrong corporate defendant it "transferred" the complaint to another county but failed to attach an affidavit to "this refiled (transferred) complaint." Id. at 205. The defendants moved to dismiss for lack of a malpractice affidavit, and the trial court granted the motion, albeit without prejudice. When the plaintiff attempted to "renew" the complaint, the trial court granted summary judgment, and this Court affirmed. Id. This Court held that the plaintiff's case could not be renewed because the initial complaint was "invalid." But the reasoning of the case is fatally flawed.

Most importantly, without even mentioning *Patterson* or *Reid*, the opinion concludes that the plaintiff's suit was not a "valid suit"

---

[9] Pursuant to OCGA § 9-2-61 (a), a case commenced within the applicable limitation period may be dismissed and recommenced within six months even if the limitation period has expired. The privilege of dismissal and renewal under OCGA § 9-2-61 does not apply to a case dismissed on the merits or to a case which was void when dismissed, but it does apply if the dismissed case was merely voidable. *Hobbs v. Arthur*, 264 Ga. 359, 360 (444 SE2d 322) (1994). "A suit is also void and incapable of renewal under OCGA § 9-2-61 (a) if there has been a judicial determination that dismissal is authorized . . . [but] unless and until the trial court enters an order dismissing a valid action, it is merely voidable and not void." Id. *Buckler v. DeKalb County*, 290 Ga. App. 190, 191 (1) (659 SE2d 398) (2008).

and therefore could not be renewed. Yet *Patterson* had held, based on *the same version* of OCGA § 9-11-9.1[10] and the renewal statute, that the failure to file the required affidavit contemporaneously with the complaint *does not* render the complaint void ab initio but merely voidable and that it can be renewed. *Patterson*, 258 Ga. at 804 (4).[11]

Next, *Foskey* took the first of several subsequent steps of conflating the law of amendment with that of renewal. It supported its decision on renewal by extrapolating from another Supreme Court decision that had sanctioned the use of amendment under OCGA § 9-11-15 as a means of curing failure to file an affidavit in a case where the plaintiff did have the affidavit but had mistakenly failed to file it. *St. Joseph's Hosp. v. Nease*, 259 Ga. 153 (377 SE2d 847) (1989). *Nease* had held, at least under those facts, that the failure to file an affidavit *was* an amendable defect. Id. The court in *Foskey* correctly interpreted *Nease* to mean that if the plaintiff failed to file an expert affidavit with the original complaint and did not even have one at the time, the complaint was nonamendable. *Foskey*, 199 Ga. App. at 205.[12] But despite authority directly on point in *Patterson* authorizing renewal under these same circumstances, *Foskey* went on to conclude that a nonamendable complaint was "invalid" and therefore could not be renewed. Id.

For this leap in reasoning, *Foskey* relied on a Court of Appeals decision that predated enactment of OCGA § 9-11-9.1, and then it misread and misapplied the case. The case, *Hornsby v. Hancock*, 165 Ga. App. 543 (301 SE2d 900) (1983), makes plain that, in general, renewal is allowed as long as the original suit is not void — the same holding as in *Patterson* — although *Hornsby* used the word "valid" to describe a case that was not void. Id. at 544. The court in *Foskey* then completed the error by concluding without citation to authority that "if a complaint is dismissed for a defect that is nonamendable, there is no 'valid suit' to be renewed." *Foskey*, 199 Ga. App. at 206. The opinion in *Hornsby* does not support this conclusion, and, more importantly, the conclusion flies in the face of *Patterson*.

---

[10] The first sentence of the opinion makes clear that it was addressing the original statute. *Foskey*, 199 Ga. App. at 205.

[11] One case reasons that *Patterson* could be read as being consistent with *Foskey* because the complaint in *Patterson* had asserted that the affidavit was attached to the original complaint, even though it was not. *Austin v. Greenberg Farrow Architects*, 201 Ga. App. 448 (411 SE2d 346) (1991). But, even under *Foskey* it is the actual possession of an affidavit at the time of the complaint that renders a complaint valid, not a mere assertion of one. Thus, *Austin's* attempt to reconcile *Patterson* and *Foskey* is unavailing.

[12] See also *Brake v. Mintz*, 193 Ga. App. 662, 667 (388 SE2d 715) (1989) (where plaintiff did not have an affidavit at the time of the complaint nor within 45 days thereof under the "10-45 day rule" (see n. 14, infra), and where the court did not abuse its discretion by denying an extension of time to file it, there was no amendable defect).

In short, *Foskey* ignored controlling authority and failed to correctly apply the renewal statute.[13] *Foskey* conflated the concept of "nonamendable" with the idea that a void case may not be renewed, and that confusion persists in case law regarding the section 9.1 affidavit requirement to this day. *Foskey* cannot be read as having changed directly applicable Supreme Court precedent in *Patterson*, which held that failure to file an expert affidavit with the initial complaint renders the complaint *merely voidable* and that such a case *may be renewed* after the running of the statute of limitation, even in a case where the plaintiff did not have the affidavit at the time of the initial complaint.

Nothing in any subsequent amendment to OCGA § 9-11-9.1 changed the precedent set by *Patterson*. Subsection (f), at issue in this case, along with subsection (e) (regarding amendments), was added in 1989, and neither it nor any other changes to the statute made at that time makes a complaint lacking the requisite affidavit void and therefore not renewable. Indeed, albeit in dicta, the Supreme Court in *Nease* noted that "[t]hese new subsections are consistent with our decisions in *Glaser* [*v. Meck*, 258 Ga. 468 (369 SE2d 912) (1988)], *Patterson*, and the present case." Id. at 155, n. 3.

More specifically, subsection (e) simply added a limitation to the circumstances under which *amendment* could be used to correct failure to file an affidavit:

> Except as allowed under subsection (b) [the 10-45 day rule[14]], if a plaintiff fails to file an affidavit . . . contemporaneously with a complaint . . . *and* the defendant raises the failure to file . . . in its initial responsive pleading, such complaint *is subject to* dismissal for failure to state a claim and cannot be cured by amendment . . . unless a court determines that the plaintiff had the requisite affidavit available prior to filing the complaint and the failure to file the affidavit was the result of a mistake.

---

[13] *Foskey* also fails to mention anything about the statute of limitation and whether or when it had run in the case. *Foskey*, 199 Ga. App. 205. And, in that case the plaintiff *did* have an affidavit at the time of its initial complaint, yet the Court rejected it because it did not make allegations against the corporate defendant. Id.

[14] As originally enacted, OCGA § 9-11-9.1 included a provision intended "to give a plaintiff extra time to secure an affidavit when the statute of limitation is about to expire." *Nease*, 259 Ga. at 154. See Ga. L. 1987, p. 887, § 3. If the suit was filed within ten days of the running of the statute of limitation and the plaintiff alleged that due to time constraints an affidavit could not be obtained, the plaintiff was allowed an additional 45 days to file it. Ga. L. 1987, p. 887, § 3. It also provided that under those circumstances, the defendant did not have to file an answer until the affidavit was filed. Id. This provision will be referred to herein as the "10-45 day rule." The current version of the statute includes a modified version of the rule. OCGA § 9-11-9.1 (2008).

(Emphasis supplied.) Ga. L. 1989, p. 419, § 3. New subsection (f) limited the circumstances under which *renewal* could be used to correct failure to file an affidavit:

> If a plaintiff fails to file an affidavit . . . *and* the defendant raises the failure to file such an affidavit in its initial responsive pleading, such complaint shall not be subject to the renewal provisions of Code Section 9-2-61 after the expiration of the applicable period of limitation, unless a court determines that the plaintiff had the requisite affidavit available prior to filing the complaint and the failure to file the affidavit was the result of a mistake.

(Emphasis supplied.) Id. These amendments limited but did not eliminate a plaintiff's ability to amend or renew following failure to file an affidavit.

Moreover, subsection (e) makes a complaint lacking an affidavit "subject to dismissal," which, far from changing, actually affirms the holding in *Patterson* in that a failure to file an affidavit with the initial complaint makes the complaint voidable, but not void. Something that is only "subject to dismissal" is not void. See *Labovitz v. Hopkinson*, 271 Ga. 330, 332-333 (2) (519 SE2d 672) (1999) (failure to file expert affidavit within limits set by OCGA § 9-11-9.1 — under 1989 amendment — *does not* result in an automatic adjudication on the merits of the case); *Shuler v. Hicks, Massey & Gardner, LLP*, 280 Ga. App. 738 (634 SE2d 786) (2006) (conclusion same through 2005 amendment). Finally, both new subsections (e) and (f) clearly show that defendants could waive the restrictions on amendment or renewal by failing to raise the defense in their initial responsive pleading. Id. This is consistent with *Glaser v. Meck*, which held that a defendant can waive the affidavit requirement by failing to raise it. *Glaser*, 258 Ga. 468. In short, new subsection (f) provided that *if the defendant properly raised the matter*, renewal after the running of the statute of limitation was limited to those situations where the plaintiff had the requisite affidavit at the time of the original complaint but mistakenly failed to file it. But the defendant could waive this requirement.

With the exception of the requirement that the defendant file a contemporaneous motion as described above, which was added in 1997, the subsection has changed very little since 1989.[15] And, as

---

[15] Compare Ga. L. 1989, p. 419, § 3 and OCGA § 9-11-9.1 (2008). The only other change to subsection (f) is that the final clause has changed from "unless a court determines that the plaintiff had the requisite affidavit available prior to filing the complaint and the failure to follow was the result of a mistake" to "unless a court determines that the plaintiff had the

shown above, there still is nothing in the plain wording of subsection (f) that forecloses renewal of an affidavit-less complaint after the statute of limitation if the defendant fails to timely file a motion. Finally, there is nothing else in any of the other amendments to OCGA § 9-11-9.1 that have changed this precedent either.

The damage wrought by *Foskey* has spread all the way to this case. In the case of *Lyberger v. Robinson*, 207 Ga. App. 845 (429 SE2d 324) (1993), the Court followed the ill-founded aspect of *Foskey* and repeated that because the plaintiffs did not have an affidavit at the time of their original complaint, it was not "valid" and therefore could not be renewed. Again, the Court failed to mention *Patterson* and *Reid*, and it also failed to consider the holding in *Labovitz*. The case of *Trucano v. Rosenberg*, 215 Ga. App. 153 (450 SE2d 216) (1994), followed *Lyberger's* erroneous law for the same conclusion. Id. The plaintiff had invoked the 10-45 day rule in her original complaint but did not file an affidavit within 45 days. Rather, she dismissed and refiled with an affidavit within six months under the renewal statute. The Court first held that because the plaintiff failed to take advantage of the 10-45 day rule and because she did not have an affidavit at the time of the original complaint, her original complaint had *a nonamendable defect*. This was correct under *Nease* and *Brake v. Mintz* and completely consistent with subsection (e), regarding amendments, of the 1989 amendment. But the Court then took another step toward conflating the law of amendment with that of renewal:

> We cannot allow the filing of the expert's affidavit outside the provisions of OCGA § 9-11-9.1 (b) pursuant to OCGA § 9-2-61 [renewal] when same cannot be accomplished pursuant to OCGA § 9-11-15 (a) [amendment].

Id. at 154.[16]

But amendment and renewal are not the same, they do not have

---

requisite affidavit within the time required by this Code section and the failure to file the affidavit was the result of a mistake."

[16] In addition to *Trucano's* flawed analysis, the current statute has changed the wording of subsection (e) in two regards: it no longer includes the reference to subsection (b); and it pertains to a different situation — one where the plaintiff *files* an affidavit which is allegedly defective. Thus, the reasoning in *Trucano* no longer has a basis in the wording of the current statute.

The Court also divined meaning from the fact that new subsection (e) mentions the 10-45 day rule, which is found in subsection (b), whereas new subsection (f) does not:
> The legislature did not exclude complaints filed under subsection (b) [— the 10-45 day rule —] from the requirements of subsection (f) of OCGA § 9-11-9.1. The legislature's express exclusion of the mandates of subsection (e) from application to

156

the same underpinnings, and they should not be conflated or equated. A renewal suit is "an action de novo." *Granite State Ins. Co. v. Nord Bitumi U. S.*, 262 Ga. 502, 505 (2) (422 SE2d 191) (1992). "Unless the case *is an absolute nullity*, the defective or improper suit may be used to nurse the cause of action into full life in the proper form and forum. [Cit.]" (Emphasis supplied.) *Hobbs v. Arthur*, 264 Ga. 359, 360 (444 SE2d 322) (1994). And it has long been held that the renewal statute "is remedial, and to be liberally construed so as to preserve the right to renew the cause of action set out in a previous suit, wherever the same has been disposed of on any ground other than one affecting the merits." *Clark v. Newsome*, 180 Ga. 97, 101 (178 SE 386) (1935). Also, renewals and amendments are limited in different ways. For example, an action renewed after the running of the statute of limitation cannot be used to add parties not sued in the original action; whereas an amendment to add a party to an existing suit after the statute of limitation "relates back" under certain circumstances. See OCGA § 9-11-15 (c); *Fontaine v. Home Depot*, 250 Ga. App. 123, 124 (1) (550 SE2d 691) (2001). Similarly, a renewal after the statute of limitation is valid only if it is "substantially the same both as to the cause of action and as to the essential parties." (Citations, punctuation and emphasis omitted.) *United States Fid. & Guar. Co. v. Reid*, 268 Ga. 432, 433 (491 SE2d 50) (1997). But amendment may be used to add causes of action and parties. *Deering v. Keever*, 282 Ga. 161, 163 (646 SE2d 262) (2007). In short, amendment and renewal are not the same, and the inability to amend is not a basis for precluding an otherwise proper use of renewal.

Finally, OCGA § 9-11-9.1 was amended again in 2007 to create the current Code section. Ga. L. 2007, p. 216, § 1. One change that warrants discussion was that the legislature restored the 10-45 day rule, which had been removed in the 2005 amendment, and it slightly altered the wording. See Ga. L. 2005, p. 1, § 3. In subsection (b), after laying out a new version of the 10-45 day rule, the

complaints filed pursuant to subsection (b) clearly indicates the legislature's intent that subsection (f) apply equally to complaints filed pursuant to OCGA § 9-11-9.1 (a) and (b). Compare OCGA § 9-11-9.1 (e) with OCGA § 9-11-9.1 (f). Therefore, plaintiff's failure to file her expert's affidavit or a motion for extension of time within 45 days of filing of her complaint, foreclosed her ability to use the renewal provisions contained in OCGA § 9-2-61.

The real reason at the time for mention of subsection (b) in subsection (e) is that both pertain to amendments. Under subsection (b), a plaintiff may amend under limited circumstances related to the imminent running of the statute of limitation. Subsection (e) provides that except for subsection (b) amendments, a plaintiff's failure to file the affidavit cannot be cured by amendment unless the plaintiff had the affidavit at the time of the initial complaint. Subsection (b) need not be mentioned in subsection (f) because renewal has nothing to do with amendment.

subsection provides that if the affidavit is not filed contemporaneously with the complaint or within the dictates of the 10-45 day rule, "the complaint shall be dismissed for failure to state a claim." OCGA § 9-11-9.1 (b). This changed earlier language saying that the complaint would be "subject to dismissal for failure to state a claim." See, e.g., Ga. L. 1989, p. 419, § 3. But even this language, especially when read in the context of the entire current statute, cannot be construed as establishing that a complaint filed without an affidavit is void rather than voidable. First, the language used falls short of language in other statutes that has been construed to create an "automatic adjudication on the merits." Cf. *Shuler*, 280 Ga. App. at 739-741 (1); *Labovitz*, 271 Ga. at 332-333 (2). Wording such as "shall automatically stand dismissed," or "shall be dismissed by operation of law" is found in these other statutes. See id. (and statutes cited therein). Moreover, as has already been discussed, the plain meaning of subsection (f) shows that renewal is available after the running of the statute of limitation where no affidavit was filed with the original complaint. Thus, even under the current version of OCGA § 9-11-9.1, the Supreme Court's holding in *Patterson* and *Labovitz* still obtains — a complaint lacking the requisite affidavit is merely voidable. See also *Shuler*, 280 Ga. App. 738.

The case of *Grier-Baxter v. Sibley* relied on *Trucano*. *Grier-Baxter*, 247 Ga. App. at 561 (2). And *Griffin v. Carson*, 255 Ga. App. 373, 375 (3) (566 SE2d 36) (2002), relied on *Lyberger* and *Grier-Baxter*. As has been shown, the damage caused by *Foskey v. Foster* has been carried forward to the cases relied upon by the dissent. Cases such as *Shuler v. Hicks, Massey & Gardner, LLP*, 280 Ga. App. 738 (634 SE2d 786) (2006), have contradicted aspects of *Foskey* and its progeny, but the problems remain today.

In conclusion, cases that held that failure to file an affidavit with the complaint renders the complaint void and not subject to renewal should be overruled on this point, namely, *Foskey v. Foster*, 199 Ga. App. 205; *Lyberger v. Robinson*, 207 Ga. App. 845; *Trucano v. Rosenberg*, 215 Ga. App. 153; *Grier-Baxter v. Sibley*, 247 Ga. App. 560; *Witherspoon v. Aranas*, 254 Ga. App. 609 (562 SE2d 853) (2002); and *Shirley v. Hosp. Auth. of Valdosta/Lowndes County*, 263 Ga. App. 408 (587 SE2d 873) (2003). And *Winfrey v. Total Health Clinic Corp.*, 255 Ga. App. 617, should be overruled for the reasons stated herein.[17]

OCGA § 9-11-9.1 puts a heavy obligation on plaintiffs in professional negligence actions. To ignore the obligations imposed on

---

[17] In *Griffin v. Carson*, 255 Ga. App. 373, the defendant raised the relevant issue in a motion to dismiss filed contemporaneously with the complaint and, therefore, need not be overruled.

defendants would be unfair. Because the defendants failed to move to dismiss the plaintiffs' original complaint contemporaneously with their initial responsive pleading, the plaintiffs were authorized to renew their complaint after the running of the statute of limitation even though they did not have an affidavit at the time of the original complaint.

*Judgment reversed. Miller, C. J., Smith, P. J., Barnes, Ellington, Phipps, and Bernes, JJ., concur. Doyle, J., concurs and concurs specially. Andrews, P. J., Johnson, P. J., Blackburn, P. J., and Mikell, J., dissent.*

DOYLE, Judge, concurring and concurring specially.

I concur fully with the majority. I write separately, however, to note that, with respect to Division 2 (a) of the majority, even if we were to reach the conclusion that, under OCGA § 9-11-9.1 (f), the defendants were not required to raise the plaintiffs' failure to file an expert affidavit in a motion filed separately from their answers, the defendants' answers did not contain sufficient language to effectuate a motion to dismiss. As noted in the majority opinion, merely raising a general defense (that the complaint fails to state a claim) and making a conclusory statement, as was done here, that having answered the complaint it "should be dismissed" does not meet the requirements of a motion to dismiss for purposes of OCGA § 9-11-9.1.[18] Cf. *Glass v. Glover*, 241 Ga. App. 838, 839 (528 SE2d 262) (2000); *Howell v. Styles*, 221 Ga. App. 781, 782 (1) (472 SE2d 548) (1996). Accordingly, the defendants' answers here would not have sufficed to meet the requirement of OCGA § 9-11-9.1 (f) to raise the failure to file an affidavit by *motion to dismiss*. Thus, irrespective of whether a motion to dismiss must be filed as a separate document or not, the plaintiffs here would still be entitled to renew their complaint because the defendants did not properly raise the issue.

Furthermore, with respect to Division 2 (b) of the majority, I write separately to point out that in four of the overruled cases, *Foskey v. Foster*, 199 Ga. App. 205 (404 SE2d 303) (1991); *Lyberger v. Robinson*, 207 Ga. App. 845 (429 SE2d 324) (1993); *Witherspoon v. Aranas*, 254 Ga. App. 609 (562 SE2d 853) (2002); and *Shirley v. Hosp. Auth. of Valdosta/Lowndes County*, 263 Ga. App. 408 (587 SE2d 873) (2003), the defendants did move to dismiss (or did raise the defect in their initial responsive pleadings), as required by the applicable statute, so the complaints, which initially failed to include

---

[18] Similarly, defendant's second defense stating "to the extent as may be shown by the evidence through discovery, this Defendant avers the Plaintiffs have failed to comply with OCGA § 9-11-9.1" does not equate to a motion to dismiss.

the required affidavits, would have been subject to dismissal for failure to demonstrate mistake, despite the cases' erroneous holdings with respect to the nonamendability of the defective complaints.[19]

BLACKBURN, Presiding Judge, dissenting.

I respectfully dissent with the majority opinion on two separate grounds. First, the Chandlers were required to attach an expert affidavit to their original complaint because their claims alleged professional negligence. Second, defendants did not waive their defense of asserting the Chandlers' failure to attach such an affidavit, and thus I disagree with the majority's contention that this Court should overrule established precedent in this matter. Accordingly, I would affirm the trial court's grant of defendants' motion to dismiss.

1. OCGA § 9-11-9.1 (a) (3) requires that any action alleging professional malpractice be accompanied by an expert affidavit setting forth "at least one negligent act or omission claimed to exist and the factual basis for each such claim." An expert affidavit is also required when a complaint seeks damages against a licensed health care facility based on a claim that the facility is vicariously liable for the professional malpractice of a health care professional. *Health Mgmt. Assocs. v. Bazemore.*[20] Thus, an expert affidavit must be filed "[w]here the professional's alleged negligence requires the exercise of professional skill and judgment to comply with a standard of conduct within the professional's area of expertise. . . ." *Bardo v. Liss.*[21] "[R]outine acts demanding no special expertise fall in the realm of simple negligence." (Punctuation omitted.) *MCG Health v. Casey.*[22] "Whether a complaint alleges ordinary negligence or professional malpractice is a question of law for the court, regardless of how the plaintiff categorizes it." (Punctuation omitted.) *Grady Gen. Hosp. v. King.*[23]

In this matter, the Chandlers argue that the defendants' failure to lower the MRI table and then to assist Mrs. Chandler in getting off the table constituted ordinary negligence. However, the degree to which the table needed to be lowered and to which Mrs. Chandler needed assistance in getting off the table given her pre-existing

---

[19] It is unclear from the opinions in *Trucano v. Rosenberg*, 215 Ga. App. 153 (450 SE2d 216) (1994), and *Grier-Baxter v. Sibley*, 247 Ga. App. 560 (545 SE2d 5) (2001), whether the same is true in those cases as there is no discussion regarding whether the defendants raised the defect in their initial answers and/or by motion to dismiss.

[20] *Health Mgmt. Assocs. v. Bazemore*, 286 Ga. App. 285, 286 (648 SE2d 749) (2007).

[21] *Bardo v. Liss*, 273 Ga. App. 103, 104 (1) (614 SE2d 101) (2005).

[22] *MCG Health v. Casey*, 269 Ga. App. 125, 128 (603 SE2d 438) (2004).

[23] *Grady Gen. Hosp. v. King*, 288 Ga. App. 101, 102 (653 SE2d 367) (2007).

shoulder injury required the exercise of the MRI technician's expert medical judgment. Indeed, this Court has "found that similar allegations of medical negligence constituted professional rather than ordinary negligence because the degree of physical assistance needed by a patient to prevent a fall in light of the patient's medical condition required the exercise of expert medical judgment." *Bardo*, supra, 273 Ga. App. at 104-105 (doctor's failure to assist patient as she stepped down from examination table was professional negligence). See *Gaddis v. Chatsworth Health Care Center*[24] (nursing home's failure to implement precautions to prevent a patient from falling was professional negligence); *Holloway v. Northside Hosp.*[25] (nurses' failure to assist plaintiff and prevent her from falling constituted professional negligence); *Sparks v. Southwest Community Hosp. &c.*[26] (hospital's decision to use the type of wheelchair from which plaintiff fell constituted professional malpractice). Compare *Candler Gen. Hosp. v. McNorrill*[27] (nurse's decision to undertake the physical act of moving the patient from a stretcher or casting table to a wheelchair was merely an act of physical strength and dexterity rather than an act requiring the exercise of expert medical judgment).

In arguing that the trial court's decision should be reversed, the majority makes no attempt to distinguish the four cases cited above, which found facts analogous to those at issue here to constitute professional malpractice claims. Nor does the majority argue that these four cases should be overruled. Instead, the majority simply ignores these cases and, relying on *Health Mgmt. Assocs. v. Bazemore*, supra, speculates that the Chandlers may be able to develop evidence supporting a theory of ordinary negligence. This reliance is misplaced. In *Health Mgmt. Assocs.*, plaintiff's complaint alleged that an "employee" of a medical center "negligently failed to give adequate assistance and supervision to [plaintiff] while taking her to the restroom." Supra, 286 Ga. App. at 286. Under these circumstances, this Court held that the allegations in plaintiff's complaint were "so general and unspecific" that plaintiff could produce evidence in support of professional negligence or ordinary negligence claims. Id. at 287.

In contrast, here, the Chandlers do not allege that some unidentified employee caused Mrs. Chandler's fall but rather specifically

[24] *Gaddis v. Chatsworth Health Care Center*, 282 Ga. App. 615, 618 (2) (639 SE2d 399) (2006).

[25] *Holloway v. Northside Hosp.*, 230 Ga. App. 371, 372 (496 SE2d 510) (1998).

[26] *Sparks v. Southwest Community Hosp. &c.*, 195 Ga. App. 858 (395 SE2d 68) (1990).

[27] *Candler Gen. Hosp. v. McNorrill*, 182 Ga. App. 107, 110-111 (2) (354 SE2d 872) (1987).

allege that the MRI technician was responsible. In further contrast, the Chandlers do not allege that the act that caused her fall was something as commonplace as assisting someone to the restroom but rather specifically allege that the MRI technician's failure to lower the table (an action for which the technician was specially trained as evidenced by the expert's affidavit that the Chandlers attached to their refiled complaint) was the negligent act. It should also be noted that in *Health Mgmt. Assocs.*, this Court approvingly cited *Bardo v. Liss*, supra, 273 Ga. App. 103, as an example of a case where expert medical judgment was required in assisting a patient off of an examination table. *Health Mgmt. Assocs.*, supra, 286 Ga. App. at 287-288. As previously mentioned, the facts in *Bardo* are nearly indistinguishable from those at issue in this matter. Accordingly, I find no error in the trial court's conclusion that the Chandlers' original complaint stated claims based on professional negligence and thus required the attachment of an expert affidavit.

2. I also disagree with the majority's conclusion that defendants waived any defense under former OCGA § 9-11-9.1 (c) by not filing a separate motion to dismiss contemporaneously with their initial pleadings in the original action. Former OCGA § 9-11-9.1 (c)[28] provided:

> If a plaintiff fails to file an affidavit as required by this Code section and the defendant raises the failure to file such an affidavit by motion to dismiss filed contemporaneously with its initial responsive pleading, such complaint shall not be subject to the renewal provisions of Code Section 9-2-61 after the expiration of the applicable period of limitation, unless a court determines that the plaintiff had the requisite affidavit within the time required by this Code section and the failure to file the affidavit was the result of a mistake.

Thus,

> failure to file an expert affidavit with the complaint as required by OCGA § 9-11-9.1 is a non-amendable defect foreclosing the use of OCGA § 9-2-61, unless the court determines that the affidavit was available prior to the filing of the complaint, and that the failure to timely file it was the result of a mistake.

---

[28] In the 2007 amendment to this statute, former OCGA § 9-11-9.1 (c) was redesignated as OCGA § 9-11-9.1 (f). The language in subsection (f) is identical to that of former subsection (c). See Ga. L. 2007, p. 216, § 1.

162

(Punctuation omitted.) *Grier-Baxter v. Sibley.*[29] See *Lyberger v. Robinson.*[30]

Here, in their initial answers, defendants raised the Chandlers' failure to file an expert affidavit as an affirmative defense and requested that the complaint be dismissed but did not file a separate motion to dismiss the complaint until nearly five months later. In interpreting the language in OCGA § 9-11-9.1 regarding raising a plaintiff's failure to file an expert affidavit, this Court has held that while the statute "authorizes the filing of a separate motion, it does not preclude its inclusion in the initial response." *Winfrey v. Total Health Clinic Corp.*[31] "The critical requirement is the timing of defendants raising this defense, not the form in which it is raised." Id. Indeed, this Court has noted that the purpose of this language is to ensure that both the plaintiffs and the trial court are put on notice of a defendant's intent to assert this defense. Id. Thus, the defendants "did not waive their right to assert [the Chandlers'] failure to file an expert affidavit as a defense to [their] claims against them simply because they raised the failure in their initial response, rather than by separate motion filed contemporaneously therewith." Id. at 620. Compare *Glaser v. Meck*[32] (defendant waived defense of plaintiff's failure to attach an expert affidavit by not raising it in responsive pleadings until three months after filing pleadings and until after the statute of limitation had run).

The majority argues that the 1997 amendment to OCGA § 9-11-9.1, which added the "contemporaneously with" language, requires that a defendant's motion to dismiss for failure to attach an expert affidavit be a separate filing apart from but at the same time as defendant's initial pleading. Based on this interpretation of the statute and its alleged legislative history, the majority argues that *Winfrey* was wrongly decided and should be overruled. However, this Court's interpretation of the statute in *Winfrey* is supported by our Supreme Court's similar interpretation. Although the case did not focus on whether defendants had waived the expert affidavit defense, in *Mug a Bug Pest Control v. Vester,*[33] a unanimous Supreme Court of Georgia addressed the 1997 amendments to OCGA § 9-11-9.1, as well as their legislative history, and noted that

[t]he 1997 amendments changed provisions relating to the

---

[29] *Grier-Baxter v. Sibley*, 247 Ga. App. 560, 561 (2) (545 SE2d 5) (2001).
[30] *Lyberger v. Robinson*, 207 Ga. App. 845, 845-846 (429 SE2d 324) (1993).
[31] *Winfrey v. Total Health Clinic Corp.*, 255 Ga. App. 617, 619 (2) (566 SE2d 372) (2002).
[32] *Glaser v. Meck*, 258 Ga. 468 (2) (369 SE2d 912) (1988).
[33] *Mug a Bug Pest Control v. Vester*, 270 Ga. 407, 408 (1) (509 SE2d 925) (1999).

time that the affidavit must be filed, required the defendant *to seek dismissal in its initial responsive pleading*, applied the affidavit requirement to licensed healthcare facilities, and listed the 24 professions to which the requirement applies.

(Emphasis supplied). In light of the fact that the Supreme Court of Georgia has not interpreted OCGA § 9-11-9.1 to require that a motion to dismiss for failure to attach an expert affidavit be filed separately with a defendant's initial pleading, the majority's contention that *Winfrey* was wrongly decided is without merit.

The majority further argues that because defendants allegedly waived the defense of the Chandlers' failure to attach an expert affidavit, the Chandlers could dismiss and renew their complaint, pursuant to OCGA § 9-2-61, regardless of whether a court determines that the affidavit was available prior to the filing of the complaint and that the failure to timely file it was the result of a mistake. Based on this reading of OCGA § 9-11-9.1 (f), the majority concludes that numerous cases, which hold that failure to file an expert affidavit with the complaint as required by OCGA § 9-11-9.1 is a nonamendable defect foreclosing the use of OCGA § 9-2-61, were wrongly decided and should be overruled. However, because I find that the defendants did not waive their OCGA § 9-11-9.1 expert affidavit defense, I do not agree that it is necessary for the Court to address this issue in this matter. In fact, even the majority concedes that plaintiffs are prohibited from renewing a complaint after the statute of limitation has expired under OCGA § 9-2-61 if the required expert affidavit was not attached to the original complaint and this failure was properly raised by defendants pursuant to OCGA § 9-11-9.1 (f).

In summary, given that the Chandlers failed to attach the required expert affidavit to their original complaint and given that the defendants adequately raised the failure to file such an affidavit in their initial pleadings, the Chandlers' original complaint was not subject to the renewal provisions of OCGA § 9-2-61 and therefore cannot serve as a basis for a renewal action. See *Griffin v. Carson*;[34] *Grier-Baxter*, supra, 247 Ga. App. at 561-562 (2). Accordingly, I would affirm the trial court's decision.

I am authorized to state that Presiding Judge Andrews, Presiding Judge Johnson and Judge Mikell join in this dissent.

---

[34] *Griffin v. Carson*, 255 Ga. App. 373, 375 (3) (566 SE2d 36) (2002).

DECIDED JULY 15, 2009 

*Barry L. Zimmerman*, for appellants.
*Insley & Race, Brynda R. Insley*, for appellees.