**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 14, 2017**

# In the Court of Appeals of Georgia

A17A1503. GLORIA SILVA v. LIBERTY MUTUAL FIRE
  INSURANCE COMPANY.

BARNES, Presiding Judge.

Gloria Silva appeals the trial court's order granting summary judgment in favor of Liberty Mutual Fire Insurance Company ("Liberty Mutual") on Silva's uninsured / underinsured motorist ("UM") claim, which arose in the context of Silva's personal injury suit to recover for injuries sustained in an automobile collision. In granting summary judgment to Liberty Mutual, the trial court ruled that the uncontroverted evidence showed that Silva had failed to notify Liberty Mutual promptly of the collision or of her personal injury suit, which resulted in the forfeiture of her UM coverage as a matter of law. For the reasons discussed more fully below, we affirm.

Summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." OCGA § 9-11-56 (c). Following a trial court's grant of

summary judgment, we "conduct a de novo review, construing all reasonable inferences in the light most favorable to the nonmoving party." *Bank of North Ga. v. Windermere Dev.*, 316 Ga. App. 33, 34 (728 SE2d 714) (2012).

So viewed, the record shows that Silva was the named insured of a Liberty Mutual personal automobile policy that provided UM coverage of $100,000 per person / $300,000 per accident for bodily injury and $50,000 per accident for property damage. As a condition applicable to UM coverage, the policy provided:

PART E- DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses. . . .

C. A person seeking Uninsured Motorists Coverage must also: . . . Promptly send us copies of the legal papers if a suit is brought.

The policy further stated: "No legal action may be brought against [Liberty Mutual] until there has been full compliance with all the terms of this policy."

2

On September 28, 2010, Silva was a passenger in a car involved in a motor vehicle collision with James Glover. The car that Silva owned was not involved in the collision. Approximately two years later, on September 21, 2012, Silva filed a personal injury suit against Glover.[1] Silva dismissed her lawsuit against Glover on March 27, 2013, but she re-filed her suit on September 20, 2013 (the "renewal suit").

Glover had liability coverage with Allstate Insurance Company of $50,000 per person / $100,000 per accident applicable at the time of the collision. On March 27, 2015, Silva settled with Glover for $36,950, the remaining amount of liability coverage available under Glover's Allstate policy because of prior settlements that Glover had reached with other individuals involved in the collision. Following the settlement, on May 4, 2015, Silva amended her complaint in the renewal suit to include a claim that the automobile collision was covered by her UM coverage provided by Liberty Mutual. The next day, Liberty Mutual was served with a copy of the amended complaint. Silva had not previously notified Liberty Mutual of the collision or the lawsuits.

---

[1] Silva also named Janet Glover as a defendant under negligent entrustment and other theories, but for ease of reference, Janet and James Glover will be referred to collectively as "Glover."

Liberty Mutual answered, raising the defense that Silva had not complied with her duties specified in her insurance policy, and filed a cross-claim against Glover. Liberty Mutual later filed a motion for summary judgment, contending that the uncontroverted evidence showed that Silva did not notify Liberty Mutual that an accident had occurred until four years and seven months after the September 2010 automobile collision, and did not notify Liberty Mutual of any lawsuits until eighteen months after she filed the September 2013 renewal suit. Consequently, Liberty Mutual argued that Silva failed as a matter of law to comply with the notice provisions contained in her insurance policy, thereby entitling Liberty Mutual to deny UM coverage for the collision.

Opposing the motion for summary judgment, Silva responded that her counsel had been unaware that Silva might need to utilize UM coverage until her counsel learned in March 2015 that eight other individuals involved in the collision had asserted claims against Glover under his Allstate policy, such that there was only $36,950 in coverage still available to cover Silva's losses arising from the collision. Silva further responded that upon learning of the limited liability coverage still available under the Allstate policy and settling with Glover for that amount, her counsel obtained a copy of the Liberty Mutual policy and thereafter notified Liberty

4

Mutual of the automobile collision by serving the company with the amended complaint. As such, Silva argued that there was a jury issue regarding whether she "promptly" notified Liberty Mutual of the collision and lawsuit under the notice provisions of her Liberty Mutual policy. Silva further argued that the notice provisions of her Liberty Mutual policy were unenforceable because they conflicted with OCGA § 33-7-11 (d), the Georgia statute governing uninsured motorist coverage, and that the notice she provided to Liberty Mutual of the lawsuit was timely under that statute.

Following a hearing, the trial court granted summary judgment to Liberty Mutual on Silva's UM coverage claim. The trial court concluded that the uncontroverted evidence showed that Silva had failed to comply with the notice provisions contained in her Liberty Mutual insurance policy, and the court enforced those provisions and held that Silva had forfeited coverage under the policy based on her non-compliance. This appeal by Silva followed.

1. Silva contends that the trial court erred in granting summary judgment to Liberty Mutual because a jury issue existed as to whether she promptly notified Liberty Mutual of the automobile collision and of her lawsuit against Glover in accordance with the notice provisions of her insurance policy. We disagree.

5

"Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms[.]" (Citation omitted.) *Lima Delta Co. v. Global Aerospace*, 338 Ga. App. 40, 42 (1) (789 SE2d 230) (2016). To that end,

> a notice provision expressly made a condition precedent to [insurance] coverage is valid and must be complied with, absent a showing of justification. Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, then the insurer is not obligated to provide either a defense or coverage. Thus, failure to provide the requisite notice could result in a forfeiture under the policy.

(Citation, punctuation, and footnote omitted.) *Lankford v. State Farm Mut. Automobile Ins. Co.*, 307 Ga. App. 12, 14 (703 SE2d 436) (2010).[2] "[T]he issue of whether notice is timely and meets the policy provisions is usually a question of fact for the jury. Unexcused significant delay, however, may be unreasonable as a matter of law." (Citations and punctuation omitted.) *Advocate Networks v. Hartford Fire Ins. Co.*, 296 Ga. App. 338, 340 (1) (674 SE2d 617) (2009). See *Protective Ins. Co. v. Johnson*, 256 Ga. 713, 713-714 (1) (352 SE2d 760) (1987) (17-month delay in

---

[2] Silva does not dispute on appeal that the notice provisions of the Liberty Mutual policy were a condition precedent to UM coverage.

6

notifying insurer unreasonable as a matter of law); *Royer v. Murphy*, 277 Ga. App. 150, 151 (625 SE2d 544) (2006) (almost two-year delay in notifying insurer unreasonable as matter of law); *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316-317 (1) (562 SE2d 267) (2002) (approximate one-year delay in notifying insurer unreasonable as a matter of law); *Tambone v. Indiana Ins. Co.*, 229 Ga. App. 198, 200-201 (2) (493 SE2d 578) (1997) (18-month delay in notifying insurer unreasonable as a matter of law).

Applying these principles, we held in *Lankford*, 307 Ga. App. at 14-16, that an approximate two-year delay in providing notice of an automobile accident to the UM insurance carrier was unreasonable as a matter of law, where the insured was required under the insurance policy to notify the carrier of an accident "as soon as reasonably possible." In reaching that conclusion, we rejected the insured's argument that the delay was excused because he was initially unaware that he might need to utilize his UM coverage and only later became concerned that his losses might exceed the coverage provided by the other driver's liability policy. Id. at 16. We emphasized that the notice provision required the insured "to provide notice 'as soon as reasonably possible' after the accident, and not as 'soon as reasonably possible' after the point that [the other driver's] coverage was exhausted or that [the insured] became

7

concerned that his losses might exceed [the other driver's] policy limits." Id. at 14. We explained,

> To hold otherwise would allow an insured to delay notifying the insurer for months or even years, so long as the insured thought that other insurance existed to cover the loss. Such an interpretation is contrary to the obvious intent of the policy, which is to require notice within a reasonable period after the occurrence of a covered event.

(Citations and punctuation omitted.) Id. at 14-15.

A similar decision was reached by this Court in *Burkett v. Liberty Mut. Fire Ins. Co.*, 278 Ga. App. 681, 683 (a) (629 SE2d 558) (2006). In *Burkett*, the plaintiff failed to provide notice to his UM carrier until two years after the accident and more than one year after a declaratory judgment had been filed. Id. at 682, 683 (a). The plaintiff's insurance policy contained a notice provision requiring the insured to "promptly" send the carrier copies of any legal papers if a lawsuit was brought. Id. at 683 (a). We held that the more than one-year delay in providing notice to the UM carrier of the declaratory judgment action did not amount to "prompt" notice under the terms of the insurance policy as a matter of law, and that the plaintiff therefore was not entitled to UM coverage. Id. We noted that the plaintiff had failed to point to any "fraud, overreaching, or other reason for his delay." Id.

8

The present case is controlled by our decisions in *Lankford* and *Burkette*. Similar to the language of the insurance policy in *Lankford*, 307 Ga. App. at 14, Silva had a duty under her policy to notify Liberty Mutual "promptly" of any accident or loss.[3] And similar to the language of the insurance policy in *Burkette*, 278 Ga. App. at 683 (a), Silva had a duty under her policy to "promptly" send Liberty Mutual copies of any legal papers if a lawsuit was brought. Yet, Silva waited four years and seven months after the automobile collision and eighteen months after filing the September 2013 renewal suit before providing any notice to Liberty Mutual. Consequently, pursuant to *Lankford* and *Burkette*, we conclude that Silva failed as a matter of law to provide "prompt" notice of the collision and lawsuit to Liberty Mutual as required for coverage under the terms of her insurance policy.

In reaching this conclusion, we note that Silva's only excuse for her delay in notifying Liberty Mutual was that her counsel was unaware that Silva would need to utilize her UM coverage until later learning that Silva's losses exceeded the coverage still available under Glover's Allstate liability policy. But that was essentially the

---

[3] "It seems appropriate to rely on our precedent [such as *Lankford*] construing provisions that require notice be given 'as soon as practicable' or similar language in this case involving a provision requiring that notice be given 'promptly.' The word 'promptly' essentially means to do something as soon as possible." *Progressive Mountain Ins. Co. v. Bishop*, 338 Ga. App. 115, 119 (2), n.4 (790 SE2d 91) (2016).

9

same excuse rejected by this Court in *Lankford*, and therefore under the reasoning of that decision, Silva's over four-year delay in providing notice to Liberty Mutual was unexcused as a matter of law. See *Lankford*, 307 Ga. App. at 14-16. See also *Geico Indem. Co. v. Smith*, 338 Ga. App. 455, 456-457 (1), 458 (788 SE2d 150) (2016) (physical precedent only) (passenger in car involved in automobile collision violated notice provision requiring notification of her UM carrier "as soon as possible" after accident, where passenger waited six months before notifying her carrier of accident, and her only excuse for the delay was that "her attorney initially did not believe the [UM] coverage would apply, but later thought her claim might exceed the liability limits available").[4] The trial court thus committed no error in concluding that Silva failed to comply with the notice provisions of her Liberty Mutual policy as a matter of law, thereby forfeiting her right to UM coverage.

---

[4] Silva relies on *Progressive Mountain Ins. Co.*, 338 Ga. App. 115, in arguing that a question of fact exists regarding whether she promptly notified Liberty Mutual of the accident. However, *Progressive* is distinguishable because in that case, the insured's delay in providing notice to the UM carrier of the accident was less than 11 months, and the insured had what our case law has treated as a reasonable excuse for the delay, namely, the insured's inability to recognize the full extent of the injuries he had sustained in the accident until many months later. See id. at 119-121 (2). See also *Geico Indemnity Co.*, 338 Ga. App. at 458-459 (on motion for reconsideration) (relying upon *Lankford* and distinguishing *Progressive*).

2. Silva also contends that the trial court erred in granting summary judgment to Liberty Mutual because the notice provisions of the Liberty Mutual policy conflict with OCGA § 33-7-11 (d) and thus are unenforceable. According to Silva, she complied with OCGA § 33-7-11 (d) by serving Liberty Mutual with a copy of the amended complaint in the renewal suit within 90 days of learning that Glover lacked adequate liability insurance to cover her losses, and her compliance with that statutory subsection was sufficient to fulfill her duty to provide notice to Liberty Mutual. We are unpersuaded.

"Competent parties are free to choose, insert, and agree to whatever provisions they desire in a contract, including insurance contracts, unless prohibited by statute or public policy." (Citation omitted.) *Hix v. Hertz Corp.*, 307 Ga. App. 369, 371 (705 SE2d 219) (2010). "When an uninsured motorist policy provision is in conflict with the clear intent of OCGA § 33-7-11, the policy provision is unenforceable and the statute controls." *Dees v. Logan*, 282 Ga. 815, 816 (653 SE2d 735) (2007).

Mindful of these principles, we turn to the language of OCGA § 33-7-11 (d), which provides in pertinent part:

> In cases where the owner or operator of any vehicle causing injury or damages is known, and either or both are named as defendants in any

11

action for such injury or damages, and a reasonable belief exists that the vehicle is an uninsured motor vehicle under subparagraph (b) (1) (D) of this Code section, a copy of the action and all pleadings thereto shall be served as prescribed by law upon the insurance company issuing the policy as though the insurance company were actually named as a party defendant. If facts arise after an action has been commenced which create a reasonable belief that a vehicle is an uninsured motor vehicle under subparagraph (b) (1) (D) of this Code section and no such reasonable belief existed prior to the commencement of the action against the defendant, and the complaint was timely served on the defendant, the insurance company issuing the policy shall be served within either the remainder of the time allowed for valid service on the defendant or 90 days after the date on which the party seeking relief discovered, or in the exercise of due diligence should have discovered, that the vehicle was uninsured or underinsured, whichever period is greater.

By its plain and unambiguous language, OCGA § 33-7-11 (d) provides that a UM carrier must be served in lawsuits where the plaintiff has a reasonable belief that the defendant tortfeasor's vehicle is uninsured or underinsured. If the plaintiff's reasonable belief arises only after the lawsuit has already commenced, the plaintiff can serve the UM carrier within the remaining time allowed for valid service on the defendant tortfeasor or 90 days after the plaintiff "discovered, or in the exercise of

12

due diligence should have discovered, that the vehicle was uninsured or underinsured, whichever period is greater." OCGA § 33-7-11 (d).

As our Supreme Court has explained in analyzing OCGA § 33-7-11 (d), the statutory "purpose of service on the [UM carrier] is simply to provide notice of the pendency of a lawsuit" in which the carrier "ultimately may be held financially responsible." (Citation and punctuation omitted.) *Stout v. Cincinnati Ins. Co.*, 269 Ga. 611, 612 (502 SE2d 226) (1998).[5] In contrast, the "obvious intent" behind a separate notice provision in an insurance policy requiring prompt notice of an *accident or loss* is to "require notice within a reasonable period after the occurrence of a covered event," *Lankford*, 307 Ga. App. at 15, which ensures that an insurer can conduct its own independent investigation before evidence and witnesses have disappeared and memories have faded. Hence, contractual notice provisions like the one in the present case requiring notification of the UM carrier promptly after an accident or loss serve a different purpose than OCGA § 33-7-11 (d) and do not conflict with its terms. It follows that OCGA § 33-7-11 (d) did not render unenforceable Silva's separate

---

[5] While OCGA § 33-7-11 (d) was amended after the Supreme Court's decision in *Stout*, see Ga. L. 1998, p. 1064, § 3, the amendment did not undercut the conclusions reached in that case regarding the basic purpose of the statutory subsection. See *Hayward v. Retention Alternatives Ltd.*, 291 Ga. App. 232, 233-234 (1) (661 SE2d 862) (2008).

contractual obligation to provide Liberty Mutual with prompt notice of the automobile collision, as Silva failed to do in this case.[6] The trial court therefore committed no error in rejecting Silva's argument predicated on OCGA § 33-7-11 (d) and granting summary judgment to Liberty Mutual.

*Judgment affirmed. McMillian and Mercier, JJ., concur.*

---

[6] In light of our conclusion that OCGA § 33-7-11 (d) did not conflict with Silva's contractual obligation to promptly notify Liberty Mutual of the automobile collision, we need not address whether the statutory subsection conflicted with Silva's separate contractual obligation to promptly send Liberty Mutual copies of legal papers if any suit was brought.

14