**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 18, 2018**

# In the Court of Appeals of Georgia

A18A1398. TAYLOR et al. v. STATE FARM FIRE & CASUALTY
CO.

BETHEL, Judge.

Charles and Alberta Taylor (collectively, the Taylors) appeal from a trial court's order granting State Farm Fire and Casualty Company's motion for summary judgment. The Taylors contend the trial court erred in finding that they failed to provide timely notice of their claim to State Farm, and that State Farm had reasonable grounds for denying their claim and therefore was not motivated by bad faith. For reasons explained below, we affirm.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Summary judgments enjoy no presumption of correctness on appeal, and an

appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met. In our de novo review of the grant or denial of a motion for summary judgment, we must view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the nonmovant.

*Plantation Pipe Line Co. v. Stonewall Ins. Co.*, 335 Ga. App. 302, 302 (780 SE2d 501) (2015) (citations and punctuation omitted).

*Underlying Dispute*

The record reflects that the Taylors own a home in Fulton County that is subject to certain protective covenants governed by Regency Oaks Neighborhood Association, Inc. (the Association). From 2011 until February 2014, Alberta Taylor served on the Regency Oaks Advisory Committee (the Committee) and held a treasurer position within the Committee.[1] As part of her service to the Committee, Alberta Taylor would send mass email bulletins to the entire community using an email address she created as a sub-account connected to her personal email address. In February 2014, the board of directors formally transitioned from a developer-managed board to a board managed entirely by homeowners in the community

---

[1] The Committee served as a liaison between the homeowners in the community and the board of directors controlled by the developer. Its primary task was to organize social and community events.

(hereinafter "the Board"). The Committee was dissolved upon the formation of the Board, and Alberta resigned from the Committee and elected not to run for a position on the newly formed Board.

The Board asked that Alberta provide them with the login credentials for the email account she previously used as a member of the Committee to communicate with homeowners. Alberta explained to the Board that she would not turn over access to the email account because doing so would also surrender access to her personal account. Moreover, Alberta informed the Board that she deactivated the email account shortly after the Board was formed and her service on the Committee had ended. In response, the Board suspended the Taylors' voting rights and access cards to community amenities, and it levied a $25 per day fine against the Taylors that constituted a lien on their property.

In September 2014, the Taylors filed suit against the Association arising out of the Board's actions for breach of contract, breach of fiduciary duty, equitable relief, punitive damages, and attorney fees in the Superior Court of Fulton County. More specifically, the Taylors alleged that the fines and sanctions imposed by the Board were unenforceable and in violation of the Association's governing documents. In October 2014, the Association filed its answer and counterclaims alleging, *inter*

3

*alia*, that Alberta's refusal to grant the Board access to the email account breached numerous duties owed in connection with her service on the Committee.

*The Policy*

Three months after the Board was established and Alberta resigned from the Committee, State Farm Fire and Casualty Company issued a business owners policy with an effective period of May 2014 to May 2015 to the Association ("Policy"). The Policy included a directors and officers liability endorsement providing State Farm would "pay those sums the insured becomes legally obligated to pay as damages because of a wrongful act to which this endorsement provides." As a general condition under the Policy, Section II, Para 3 (b) - (c) provide that "if a claim or suit is brought against an insured," the insured is obligated to notify State Farm "as soon as practicable" with copies of any "demands, notices, summonses or legal papers received in connection with the claim or suit[.]"

Having learned about the Policy after filing suit, in January 2015 the Taylors sent a letter to State Farm notifying it of their lawsuit against the Association. The letter stated in part:

> It has come to my attention that the Regency Oaks Neighborhood Association has liability coverage with State Farm Insurance and that

you are likely unaware of this case. Enclosed, please find a copy of the Complaint filed against your Insured. Please take this letter as notice of a claim.

Shortly thereafter, State Farm provided defense counsel to the Association pursuant to a reservation of rights, but did not respond to the Taylors' letter. In July 2016, the Taylors sent a second letter to State Farm, this time demanding insurance coverage under the Policy with respect to the Association's counterclaims against the Taylors. The second letter stated in part that under the Policy's definition of the insured, Alberta Taylor, as an officer of the Committee, was entitled to reimbursement of costs and attorney fees associated with defending the Association's counterclaims against them.

In September 2016, after a jury trial, the trial court entered judgment in favor of the Taylors for their breach of contract and fiduciary duty claims against the Association and awarded damages and attorney fees. The trial court also entered judgment in favor of the Association's counterclaim for breach of fiduciary duty against the Taylors and awarded nominal damages. Following the resolution of the underlying lawsuit, the Taylors sent a third letter to State Farm once again demanding coverage under the Policy and reimbursement for defending the counterclaims.

5

Counsel for State Farm responded to the third letter and denied coverage to the Taylors on the ground that the Taylors were not considered an insured under the Policy.

*Coverage Lawsuit*

The Taylors then filed suit against State Farm in the matter giving rise to this appeal, alleging breach of contract and seeking penalties under Georgia's bad faith statute. In its answer, State Farm raised several affirmative defenses including the defense that the Taylors failed to comply with conditions contained within the Policy. Following the conclusion of discovery, both parties moved for summary judgment. After hearing oral arguments on the cross motions, the trial court issued a final order granting State Farm's motion. Specifically, the trial court held that the Taylors failed to fulfill their notice obligations under the Policy and that State Farm was entitled to judgment as a matter of law.[2] This appeal followed.

1. The Taylors argue the trial court erred in finding that they failed to provide timely notice of their claim for coverage to State Farm. Alternatively, the Taylors

---

[2] Because State Farm does not contest the trial court's finding that the Taylors should be considered insured under the Policy, we do not address it here.

argue for the first time on appeal that because State Farm waived its untimely notice defense, summary judgment should be reversed. We disagree.

"[A] grant of summary judgment must be affirmed if it is right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond." *Anderson v. Jones*, 323 Ga. App. 311, 312 n. 2 (745 SE2d 787) (2013) (citation omitted). Here, the pertinent portion of the Policy states in part:

3. Duties In The Event Of Occurrence, Offense, Claim Or Suit

. . .

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify [State Farm] as soon as practicable.

c. You and any other involved insured must:

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

(1) Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit;"

. . .

4. Legal Action Against [State Farm]

No person or organization has a right under this policy:

. . .

b. To sue on this policy unless all of its terms have been fully complied with.

A person or organization may sue to recover on . . . a final judgment against an insured obtained after an actual trial; but [State Farm] will not be liable for damages that are not payable under the terms of the policy[.]

It is well established under Georgia law that those seeking recourse under an an insurance policy are bound by its plain and unambiguous terms and that courts will enforce the provisions of the policy as written. *See QBE Ins. Co. v. Couch Pipeline & Grading, Inc.*, 303 Ga. App. 196, 198 (1) (692 SE2d 795) (2010). Here, the record shows that the Taylors' first letter to State Farm in January 2015 failed to mention the

counterclaims raised against the Taylors, to demand coverage as an insured under the Policy, and to include a copy of the counterclaims as an attachment to the letter. The record further demonstrates that the Taylors did not demand coverage under the Policy until July 2016, eighteen months later. The record additionally reflects that at the time the July 2016 demand letter was sent to State Farm, discovery in the underlying case had been completed, dispositive motions had been filed, argued, and denied, and a September trial date had been scheduled. As this Court has previously held, "a notice provision expressly made a condition precedent to insurance coverage is valid and must be complied with, absent a showing of justification." *Silva v. Liberty Mut. Fire Ins. Co.*, 344 Ga. App. 81, 84 (1) 808 SE2d 886) (2017) (citations and punctuation omitted). "The issue of whether notice is timely and meets the policy provisions is usually a question of fact for the jury. Unexcused significant delay, however, may be unreasonable as a matter of law." *Id.*

Under these facts, we find that the trial court properly concluded that timely notice was a condition precedent to coverage and the January 2015 letter from the Taylors cannot be considered timely notice under the Policy. Moreover, we are unpersuaded by the Taylors' argument that State Farm knew or should have known about the counterclaims given their representation of the Association in the

underlying lawsuit. Even assuming, *arguendo*, that State Farm became aware of the existence of the counterclaims prior to the July 2016 letter, the Taylors provide no sound basis in law or the language contained within the four corners of the Policy as to how this alleged knowledge would relieve the Taylors of their affirmative obligation under the Policy to provide notice of their claim and forward a copy of the counterclaims to State Farm. *See Silva*, 344 Ga. App. at 84 (1) ("Where an insured has not demonstrated justification for failure to give notice according to the terms of the Policy, then the insurer is not obligated to provide either a defense or coverage. Thus, failure to provide the requisite notice could result in a forfeiture under the policy." (citation omitted)). Thus, State Farm was entitled to judgment as a matter of law. *See Protective Ins. Co. v. Johnson*, 256 Ga. 713, 713-714 (1) (352 SE2d 760) (1987) (17–month delay in notifying insurer unreasonable as a matter of law); *Royer v. Murphy*, 277 Ga. App. 150, 151 (625 SE2d 544) (2006) (almost two-year delay in notifying insurer unreasonable as matter of law); *Allstate Ins. Co. v. Walker*, 254 Ga. App. 315, 316-317 (1) (562 SE2d 267) (2002) (approximate one-year delay in notifying insurer unreasonable as a matter of law); *Tambone v. Indiana Ins. Co.*, 229 Ga. App. 198, 200–201 (2) (493 SE2d 578) (1997) (18–month delay in notifying insurer unreasonable as a matter of law).

We further find the Taylors' argument that State Farm waived its untimely notice defense by denying coverage on other grounds lacks merit because this argument was not raised in the trial court. As counsel for State Farm pointed out during oral argument before this Court, at the hearing on the cross motions for summary judgment, when the trial court asked for input as to whether the denial letter required State Farm to list every reason for denial of coverage, counsel for the Taylors counsel responded, "I don't believe so." Now on appeal, the Taylors seek to alter their argument by claiming State Farm's waiver of the timely notice defense precludes judgment as a matter of law. This cannot be done. *See Am. Acad. of Gen. Physicians, Inc. v. LaPlante*, 340 Ga. App. 527, 529 (1) (798 SE2d 64) (2017) ("It is well settled that issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper exception is taken. Nor may a plaintiff alter the course of its arguments mid-stream, raising issues on appeal that were not raised before the trial court." (footnote and punctuation omitted)).

2. The Taylors next argue that the trial court erred by granting State Farm's motion for summary judgment as to the Taylors' claim that State Farm's decision to deny coverage was made in bad faith. We disagree.

11

To support a cause of action under OCGA § 33-4-6, the insured bears the burden of proving that the refusal to pay the claim was made in bad faith. To do so, the insured must prove (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith. As for the insurer, a complete failure to prove any defense to an action on the policy is evidence of the bad faith contemplated by OCGA § 33-4-6, and subjects the insurer to a verdict for the statutory penalty and attorney's fees. But a defense that shows reasonable and probable cause for making it would vindicate the good faith of the company as effectually as would a complete defense to the action. And, of course, penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact.

*Auto-Owners Ins. Co. v. Neisler*, 334 Ga. App. 284, 290 (2) (779 SE2d 55) (2015).

Here, the Taylors contend the trial court ignored evidence that demonstrated State Farm's denial was motivated by bad faith. Specifically, the Taylors argue that State Farm ignored the January 2015 letter which provided notice of their claim and made no attempt to investigate the Taylors's claim until July 2016. However, as discussed in Division 1, *supra*, State Farm was not provided with notice of the Taylors' claim under the Policy until July 2016. The January 2015 letter did not mention the Association's counterclaim, did not request coverage under the Policy,

12

and only forwarded a copy of the Taylors' complaint. Moreover, the record reflects that the Policy did not become effective until three months after Alberta Taylor's term on the Committee had ended. Thus, we agree with the trial court that State Farm had reasonable factual and legal grounds for denying coverage and was entitled to summary judgment on the Taylors' bad faith claim. *See Allstate Ins. Co. v. Smith*, 266 Ga. App. 411, 413 (2) (597 SE2d 500) (2004) (holding that the insurer's grounds for refusing coverage were reasonable when there was a genuine conflict over whether the insurance claim was legitimate); *Assurance Co. of Am. v. BBB Serv. Co.*, 259 Ga. App. 54, 58 (2) (576 SE2d 38) (2002) (holding that bad-faith penalties were unauthorized when the insurance company had reasonable grounds to contest the insured's claims).

*Judgment affirmed. Ellington, P. J., and Gobeil, J., concur.*